647 F.2d 110
 Susan MAJOR and Melissa Major and Arlie Homer Major, Jr.,
minors, by and through their mother and guardian,
Susan Major, Plaintiffs-Appellants,
v.
Ned BENTON, Peter A. Douglas, and George Carr, Defendants-Appellees.
 No. 80-1029.
 United States Court of Appeals,
Tenth Circuit.
 Submitted May 21, 1980.
Decided April 13, 1981.
 
 H. J. Mesigh of Theimer, Mesign & Page, Oklahoma City, Okl., for plaintiffs-appellants.
 Robert H. Mitchell, Jan Eric Cartwright, Attys. Gen. of Oklahoma and Ronald Lee Johnson, Asst. Atty. Gen., Oklahoma City, Okl., for defendants-appellees.
 Before McKAY, LOGAN and SEYMOUR, Circuit Judges.
 LOGAN, Circuit Judge.
 
 
 1
 After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed.R.App.P. 34(a); Tenth Cir.R. 10(e). This cause is therefore ordered submitted without oral argument.
 
 
 2
 This appeal arises out of a Civil Rights Act suit brought because of the death of Arlie Major, who died in a cave-in of a sewer ditch in which he was working while serving time as an Oklahoma state prisoner. Susan Major, Melissa Major, and Arlie Homer Major, Jr., the widow and children of Arlie Major, sued Ned Benton, Peter Douglas, and George Carr, respectively Director of the Oklahoma Department of Corrections, Warden of the Lexington Regional Treatment Center, and supervisor of the plumbing crew of which Major was a member at the time of his death. Plaintiffs appeal the summary judgment entered against them ruling that defendants were free of any liability under 42 U.S.C. § 1983.
 
 
 3
 The issues on appeal are whether the district court's reversal of its prior order which had imposed liability on defendants was procedurally proper, and whether issues of material fact relating to the section 1983 cause of action exist to require a trial.
 
 
 4
 The facts of the case relevant to our decision appear to be free of dispute. Arlie Major was serving time as an inmate of the Lexington Regional Treatment Center maintained by the state of Oklahoma. He had been assigned to the facility's plumbing crew. Part of the crew's responsibility was to dig a trench for the purpose of laying a sewer pipe. The trench was approximately twelve feet deep and two to two and one-half feet wide, with no shoring or support to prevent cave-ins. Although several other cave-ins had occurred prior to the cave-in that killed Major, the workers had sufficient time to escape injury in each instance.
 
 
 5
 Plaintiffs allege that the crew supervisor, warden, and director are liable under 42 U.S.C. § 1983 for depriving Major of his life without due process of law. The allegation stems from the defendants' failure to formulate safety measures for the digging of the ditch and to implement safer conditions for digging, such as shoring the trench sides with planking. In its first Fed.R.Civ.P. 56(d) order, the trial court found that defendants had neither intended to cause the death of Major nor acted maliciously to cause him harm. There is no evidence in the record to contradict this finding; plaintiffs admit the action is based on negligence.
 
 
 6
 In the original Rule 56(d) order, the court held that defendants had an affirmative duty of care under Oklahoma law to provide for the safety of the inmates and their failure to prescribe safety rules deprived Major of his life without due process of law, making defendants liable under section 1983. Determination of the amount of damages was reserved for trial. An interlocutory appeal, sought pursuant to the trial judge's 28 U.S.C. § 1292(b) certification, was denied by this Court because of the lack of factual development in the case. Major v. Benton, No. 78-8114 (10th Cir. Nov. 29, 1978). More than a year later, before trial, the trial court reversed itself and entered summary judgment in favor of defendants. This time it held that Oklahoma statutory law did not impose any duty to formulate safeguards, that the cause of action sounds in tort and not in any violation of a right protected by the United States Constitution, and that no section 1983 claim was supported because only an isolated failure to act had been shown. This second opinion did not reverse any prior findings of facts, but instead merely drew different conclusions of law.
 
 
 7
 Plaintiffs complain of the failure of the district court to give a detailed explanation for its reversal on the issue of liability; but the legal question at issue is whether the second order impermissibly changed the law of the case.
 
 
 8
 The original determination of liability was an order interlocutory in nature, as our denial of the petition for interlocutory appeal attests. Id. See Coffman v. Federal Laboratories, Inc., 171 F.2d 94 (3d Cir. 1948), cert. denied, 336 U.S. 913, 69 S.Ct. 603, 93 L.Ed. 1076 (1949); 6 Moore's Federal Practice P 56.20(3.-4) at 56-1228-29 (2d ed. 1948). When a court enunciates a rule of law in the course of a given case, the law of the case doctrine generally requires the court to adhere to the rule throughout the proceedings. 1B Moore's Federal Practice P 0.404(1) at 402-03. The rule is one of expedition, designed to bring about a quick resolution of disputes by preventing continued reargument of issues already decided. Roberts v. Cooper, 61 U.S. (20 How.) 467, 481, 15 L.Ed. 969 (1858); White v. Murtha, 377 F.2d 428, 431-32 (5th Cir. 1967). Unlike res judicata, the rule is not an "inexorable command," but is to be applied with good sense. White v. Murtha, 377 F.2d at 431-32; see Uniformed Sanitation Men Ass'n, Inc. v. Commissioner of Sanitation, 426 F.2d 619 (2d Cir. 1970), cert. denied, 406 U.S. 961, 92 S.Ct. 2055, 32 L.Ed.2d 349 (1972). When a lower court is convinced that an interlocutory ruling it has made is substantially erroneous, the only sensible thing to do is to set itself right to avoid subsequent reversal. Lindsey v. Dayton-Hudson Corp., 592 F.2d 1118, 1121 (10th Cir.), cert. denied, 444 U.S. 856, 100 S.Ct. 116, 62 L.Ed.2d 75 (1979), 1B Moore's Federal Practice P 0.404(1) at 407. This is especially true when the prospect of a needless trial on the issue of damages is in view. Burns v. Massachusetts Inst. of Technology, 394 F.2d 416, 418 (1st Cir. 1968). Courts have generally permitted a modification of the law of the case when substantially different, new evidence has been introduced, subsequent, contradictory controlling authority exists, or the original order is clearly erroneous. See Fuhrman v. United States Steel Corp., 479 F.2d 489, 494 (6th Cir.), cert. denied, 414 U.S. 859, 94 S.Ct. 71, 38 L.Ed.2d 110 (1973); White v. Murtha, 377 F.2d at 431-32. Between the first and second rulings by the district court in this case, the Supreme Court decided Baker v. McCollan, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). In our view that case controls disposition of the substantive issues here and justifies the trial court's reversal of its position.
 
 
 9
 Contending that summary judgment was improper because material issues of fact still exist, plaintiffs focus on allegedly negligent conduct of defendants causing the death of Major. The Supreme Court has twice granted certiorari to consider whether negligent conduct can support a cause of action under 42 U.S.C. § 1983, and twice has found it unnecessary to decide. See Baker v. McCollan, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); Procunier v. Navarette, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978). In Baker the Court noted that the first inquiry in any section 1983 case is whether plaintiff has been deprived of a right secured by the Constitution and laws of the United States. 443 U.S. at 140, 99 S.Ct. at 2692. It found no such deprivation. Utilizing the same threshold inquiry, we find no liability in the instant case.
 
 
 10
 The theory of liability in this case is strikingly similar to that in Baker v. McCollan. There, McCollan was imprisoned when the arresting officer mistook him for his brother. Although McCollan's doctored identification card was the reason for the officer's mistake, he alleged that his three-day stint in jail could have been avoided if the officials had used due care in establishing identification procedures. Thus, McCollan contended defendant's negligence deprived him of liberty without due process of law. Finding it unnecessary to determine whether the deprivation was a result of negligent conduct, the Court held that no procedural due process guarantees had been violated and thus no constitutional claim existed. As stated by the Court,
 
 
 11
 "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law. Remedy for the latter type of injury must be sought in state court under traditional tort-law principles. Just as '(m)edical malpractice does not become a constitutional violation merely because the victim is a prisoner,' Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976), false imprisonment does not become a violation of the Fourteenth Amendment merely because the defendant is a state official."
 
 
 12
 443 U.S. at 146, 99 S.Ct. at 2695.
 
 
 13
 Analogizing from Baker v. McCollan, it is clear that a death resulting from the negligent action of a state official does not in itself raise a constitutional claim. In Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), plaintiff claimed that the circulation of his photograph by police as a potential shoplifter deprived him of his liberty without due process of law. The Supreme Court noted that if this postulate were accepted "it would be difficult to see why the survivors of an innocent bystander mistakenly shot by a policeman or negligently killed by a sheriff driving a governmental vehicle, would not have claims equally cognizable under § 1983." 424 U.S. at 698, 96 S.Ct. at 1159. It quoted with approval Justice Douglas' observation in Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945), that although a prisoner has been assaulted or even murdered by state officials it does not necessarily mean he has been deprived of any constitutional rights. 424 U.S. at 699, 96 S.Ct. at 1159. The Court held that the Due Process Clause does not extend a right to be free from the torts of state officials. Instead, specific constitutional guarantees must be implicated to give rise to due process protection. 424 U.S. at 700-02, 96 S.Ct. at 1160-1161.
 
 
 14
 There is no indication in the instant case that any procedural due process violation played a role in Major's death. This clearly is a complaint sounding in tort law, not cognizable under section 1983.
 
 
 15
 AFFIRMED.