**Earl D. BURNETT, Plaintiff,**

**v.**

**WESTERN RESOURCES, INC.,**
**d/b/a Kansas Power &**
**Light, Defendant.**

**Civil Action No. 95–2145–EEO.**

United States District Court,
D. Kansas.

May 13, 1996.

Memorandum Denying Reconsideration
June 19, 1996.

---

Steven D. Horak, Overland Park, KS, for plaintiff.

Glenda R. Cantrell, David P. Mudrick, Jeffrey S. Southard, Western Resources, Inc., Topeka, KS, for defendant.

*MEMORANDUM AND ORDER*

EARL E. O'CONNOR, District Judge.

This matter is before the court on plaintiff's motion for partial summary judgment (Doc. # 44) and defendant's motion for summary judgment (Doc. # 49). In the instant suit, plaintiff brings three claims against defendant Western Resources, Inc. ("Western"). First, plaintiff contends that Western discriminated against him on the basis of a disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"). Second, he claims that Western subjected him to a hostile work environment in retaliation against him for exercising his rights under the ADA. Third, Count II of plaintiff's complaint states a claim for negligent infliction of emotional distress.[1]

Plaintiff seeks partial summary judgment on liability. Defendant seeks summary judgment, contending that the undisputed facts establish that: (1) plaintiff is not disabled; (2) with or without reasonable accommodation, plaintiff was not a "qualified" individual; (3) plaintiff was not discriminated against; and (4) defendant's actions with respect to plaintiff's employment were made for legitimate, non-discriminatory and non-retaliatory reasons. The court has examined the parties' factual and legal submissions, as well as the applicable law, and is now prepared to rule. For the reasons set forth below, plaintiff's motion will be denied as moot and defendant's motion will be granted.

*Factual Background*

The following facts are uncontroverted or deemed admitted pursuant to Federal Rule of Civil Procedure 56(c) and District of Kansas Rule 56.1.

Plaintiff Earl D. Burnett was employed by defendant Western Resources, Inc., ("Western") on June 9, 1990, as a probationary gasman. Plaintiff is a member of United Steelworkers of America and performed work governed by the Union's collective bargaining agreement with Western. During

---

1. Apparently, plaintiff has abandoned this claim. *See* Pretrial Order, dated April 10, 1996 (Doc. # 61).

his employment at Western, plaintiff held various other positions, including meter reader, pipe fitter, relief operator, and service person.

While in the position of meter reader,[2] plaintiff had an on-the-job injury to his right knee on April 16, 1991, but returned to work without restrictions on May 7, 1991. On July 8, 1992, plaintiff sustained another on-the-job injury to his right knee, which required surgery on September 2, 1993. He was released to return to work with no physical restrictions on October 5, 1992.

Plaintiff bid for and received the position of Pipefitter–Class B, beginning April 6, 1993. Pursuant to procedures in the collective bargaining agreement, plaintiff was bumped back to meter reader on April 28, 1994.

While in the meter reader position, plaintiff again twisted his right knee, but was released to return to work without medical restrictions on March 17, 1994. On May 3, 1994, plaintiff reported a right knee injury and was placed on light duty until August 22, 1994. Plaintiff was given continued light duty until September 26, 1994. Plaintiff's light duty restrictions included limitations on walking and climbing stairs and hills.

After his injury on May 3, 1994, plaintiff's ability to walk was limited to a mile a day, but steadily increased with time. Plaintiff told Western's company physician, Dr. Dugan, that his knee seemed to pop occasionally, and that walking, prolonged walking, stooping, and turning a certain way irritated his knee. Plaintiff requested medication for the pain. He stated in his deposition that the only affected activities, outside those required by the meter reader job, were: his ability to play sports, such as tackle football and basketball; getting in and out of the bathtub; squatting; and turning.

On August 22, 1994, Dr. Dugan permanently restricted plaintiff to walking no more than four hours per day. Plaintiff requested rehabilitation to get him back to full strength. On September 23, 1994, Bill Boothe, the supervisor of the Mission facility, met with members of Western's human resources staff to evaluate the permanent restrictions placed on plaintiff by Dr. Dugan and the essential functions of the meter reader job. Plaintiff's immediate supervisor, Mary Richardson, did not attend the meeting. The notes from the meeting refer to plaintiff's permanent duty restriction on walking and indicate that plaintiff had received psychiatric care.

Plaintiff was not made aware of this initial meeting, but he did attend a meeting on September 26, 1994, to discuss whether he could perform the essential functions of the meter reader position. Plaintiff admitted during his deposition that he stated at the meeting that he did not know whether he could walk four hours per day, as required by the meter reader position. Moreover, he does not controvert that he was under a permanent medical restriction of walking no more than four hours per day. Plaintiff now claims that he was capable of walking more than four hours per day because he subsequently performed the relief operator job which, he contends, required him to walk more than four hours per day. He also asserts that because he later performed the meter reader job, he would have been able to perform it at that time. He does not controvert, however, that his later return to the meter reader position was after the permanent walking restriction was lifted.

In any event, it was determined at the meeting on September 26, 1994, that plaintiff could not perform the essential functions of the meter reader position because he was permanently restricted from walking over four hours per day. Plaintiff was offered the following choices: (1) transfer to a vacant position for which he was qualified; (2) present medical evidence that he could perform the essential functions of the meter reader job; (3) take leave under the Family Medical Leave Act; (4) lay off; or (5) termination.

The only vacancy located in Mission, Kansas, was the job of warehouseman. Plaintiff indicated that he thought he was physically able to perform the job and bid for the job, but did not get it because he did not possess

---

**2.** It is helpful to note at this point that someone in the meter reader position must walk from eight to twelve miles for up to six hours per day, jump fences, and contend with dogs and bushes.

**1354**

the requisite seniority. Western approached the Union and requested a waiver in the seniority policy so plaintiff could be placed in the warehouseman position, but the Union denied the request.

The remaining three company-wide vacant positions for which plaintiff was qualified were: (1) relief operator at defendant's Jeffrey Energy Center in St. Mary's, Kansas; (2) an operating and maintenance position in Ulysses, Kansas; and (3) fleet attendant in Wichita, Kansas.[3] Defendant offered plaintiff his choice of the three vacant positions, along with a relocation package of benefits, and told him he had to decide within three days if he wanted to take one of the jobs, or he would be terminated. Plaintiff selected the relief operator position, but chose to commute approximately 224 miles per day, instead of relocating to St. Mary's. Plaintiff began working as relief operator on October 10, 1994, at a pay rate reduction from $14.91 per hour to $13.17 per hour.

At plaintiff's request, Dr. Berger evaluated plaintiff's knee and sent a letter to defendant dated November 10, 1994, stating that additional treatment would alleviate plaintiff's permanent restriction on walking more than four hours per day. Plaintiff received additional treatment from Dr. Dugan in February and March 1995. Plaintiff was released to regular duty with no restrictions and was returned full time to the meter reader position on March 31, 1995. On June 5, 1995, plaintiff received a salary increase from $14.91 to $15.51 per hour. On July 20, 1995, plaintiff was promoted from meter reader to service person, the position which he presently occupies with Western.

With respect to plaintiff's retaliation claim, plaintiff alleges that: (1) Bill Boothe, supervisor of the Mission facility, created a hostile working environment by making some gruff comments about his injury[4] and by "harassing" plaintiff by discussing his foot attire with him and suggesting that it was causing plaintiff's blisters; (2) Jerry VanHooser, a

supervisor at the Mission facility, treated him in a hostile manner in that he had a "nasty attitude," gave plaintiff a dirty look at a church social, and called him in and "lectured" him for not jumping fences; (3) Mary Richardson was impolite to him and gave him routes with more inclines and stairs; (4) subjecting plaintiff to "closer scrutiny" by requesting that plaintiff bring documentation of fitness for duty after being hospitalized for psychiatric treatment (this occurred during his tenure at the Jeffrey Energy Center); (5) denying plaintiff's bid for the job of building and ground maintenance at the Jeffrey Center; (6) failing to promptly give plaintiff his five year pin; (7) failing to place plaintiff's five year anniversary in the company newspaper; (8) failing to place plaintiff on the birthday list posted at the plant; (9) failing to place plaintiff on the seniority list; (10) failing to assign plaintiff a company vehicle on a permanent basis.

*Standards Governing Summary Judgment*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.,* 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

The moving party bears the initial burden of showing that there is an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga,* 942 F.2d 737, 743 (10th Cir.1991). Essentially, the inquiry as to

---

**3.** Plaintiff contends that he could perform the position of leak surveyor and that defendant should have hired him instead of a subcontractor to do that job.

**4.** Specifically, plaintiff alleges that Boothe made the following statements to him: "How long are you going to milk that injury?"; "How long are you going to be on crutches?"; "Looks like you're putting on a few pounds."; and "You don't know what a hard route is."

whether an issue is genuine is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2511–12. An issue of fact is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. This inquiry necessarily implicates the substantive evidentiary standard of proof that would apply at trial. *Id.* at 252, 106 S.Ct. at 2512.

[redacted] Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir. 1990); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest on his pleadings, but must set forth specific facts. *Applied Genetics,* 912 F.2d at 1241.

[redacted] "[W]e must view the record in the light most favorable to the parties opposing the motion for summary judgment." *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir.1991). "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith,* 853 F.2d 789, 793 (10th Cir. 1988). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. Where the nonmoving party fails to properly respond to the motion for summary judgment, the facts as set forth by the moving party are deemed admitted for purposes of the summary judgment motion. D.Kan. Rule 206(c).

We are mindful that summary judgment is a drastic remedy, which should be approached cautiously. *Jones v. Nelson,* 484 F.2d 1165, 1168 (10th Cir.1973). At the same time, "the very purpose of summary judgment is to determine whether trial is necessary." *White v. York Int'l Corp.,* 45 F.3d 357, 360 (10th Cir.1995). Without some significant probative evidence tending to support the complaint, summary judgment should be granted. *Id.*

### *Analysis*

#### *I. Plaintiff's ADA Discrimination Claim*

[redacted] To state a prima facie case of discrimination under the ADA, plaintiff must establish: 1) that he is a "disabled person" within the meaning of the ADA; 2) that he is "qualified," that is, he is able to perform the essential functions of the job, with or without reasonable accommodation (which he must describe); and 3) that Western discriminated against him because of his disability. *White v. York Int'l Corp.,* 45 F.3d 357, 360–61 (10th Cir.1995) (citations omitted). If plaintiff meets this initial burden defendant is required to present evidence of an inability to accommodate. *Id.* at 361. Upon presentation of an inability to accommodate by the employer, the plaintiff must come forward with evidence concerning his individual capabilities and suggestions for possible accommodations to rebut the employer's claimed inability to accommodate. *Id.* Thus, the threshold inquiry is whether plaintiff has made out a prima facie case. If not, we do not reach the subsequent question of Western's ability to accommodate.

Congress intended relevant case law developed under the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., to be applicable to analogous issues under the ADA. *Id.* at 360 n. 5. In applying the ADA, we also look to the regulations promulgated at the request of Congress by the Equal Employment Opportunity Commission ("EEOC"), 29 C.F.R. § Part 1630. *See* 42 U.S.C. § 12116 and 12206.

[redacted] Defendant argues that plaintiff is not disabled within the meaning of the ADA. "Disability" is defined in the Act as follows:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B)

a record of such an impairment; or (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). "Substantially limits" means:

significantly restricted as to condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j). "Essential functions" is defined in the EEOC regulations as the "fundamental job duties of the employment position," not to include marginal functions. 29 C.F.R. § 1630.2(n)(1).

Defendant argues that while the ability to walk is a major life activity, plaintiff's restriction on walking no more than four hours per day is not a substantial limitation on the major life activities of walking or working. An average person in the general population would not be able to walk more than four hours per day without experiencing some discomfort and the limitation does not restrict plaintiff's ability to perform jobs other than the meter reader job. *See, e.g., Bolton v. Scrivner,* 36 F.3d 939 (10th Cir.1994) (a substantial limitation on working requires a showing of inability to perform either a class of jobs or a broad range of jobs, not the job of one's choice); *Nedder v. Rivier College,* 908 F.Supp. 66 (D.N.H.1995) (inability to walk at a brisk pace for extended periods is not a significant limitation on the major life activity of walking); *Stone v. Entergy Servs, Inc.,* Civ.A. No. 94–2669, 1995 WL 368473 at *4 (E.D.La. June 20, 1995). We are inclined to agree.

However, plaintiff also bases his claim on the perceived disability prong of section 12102(2)(C). Again, plaintiff's evidence in support of this alleged disability is weak. With respect to the limitation on walking, it is uncontroverted that defendant relied on Dr. Dugan's permanent medical restriction in deciding to remove plaintiff from the meter reader position and transfer him to some other available position. *See, e.g., Wooten v.*

*Farmland Foods,* 58 F.3d 382, 386 (8th Cir. 1995) (where decision to terminate was based on the physical restrictions imposed by the employee's doctor and not on "speculation, stereotype, or myth," employee was not "regarded" as disabled within the meaning of the Act); *Bernard v. Doskocil Co., Inc.,* 861 F.Supp. 1006, 1013 n. 13 (D.Kan.1994) (citing legislative history in support of proposition that the third prong of the disability definition was not intended to apply where an employer relies on limitations imposed by a doctor).

In addition, although from the notes of the September 23, 1994, meeting, it is apparent defendant was aware that plaintiff had received some "psychiatric care," plaintiff has not presented any evidence that defendant regarded him as disabled or treated him differently from other employees because of a perceived mental impairment. *See Lussier v. Runyon,* Civ. No. 92–397–P–H, 1994 WL 129776 at *10 (D.Me. March 1, 1994) (court found that employer discharged employee solely because of a fear that the employee could become violent as a result of his post traumatic stress disorder).

■ However, even assuming that plaintiff has presented a factual question about whether he was disabled within the meaning of the Act, summary judgment is proper. Plaintiff has failed to present evidence from which a jury could find that he was qualified for the meter reader position in September, 1995, or that defendant discriminated against him because of his alleged disabilities.

To establish that he is qualified to perform the meter reader job, with or without accommodation, plaintiff must present more than his subjective opinion that, because he had previously performed the meter reader job and subsequently performed the relief operator[5] and meter reader jobs, he was qualified and capable of performing the meter reader job at the time he was transferred. *See White,* 45 F.3d at 362–63. The record simply does not support plaintiff's contention that he was qualified to perform the meter reader job despite Dr. Dugan's permanent restric-

---

**5.** Plaintiff's argument that the job descriptions for the meter reader position and the relief oper-

ator position were the same is not borne out by the record.

tion that plaintiff not walk over four hours per day.

■ Plaintiff also fails to establish that he was discriminated against because of a perceived disability. Plaintiff claims that defendant discriminated against him by forcing him to take an unwanted and unrequested ADA accommodation, *i.e.*, a transfer to the relief operator job at the Jeffrey Energy Center in St. Mary's Kansas. Although the court has been unable to find a case on point, at first blush, the legislative history of the Act lends some credence to plaintiff's theory.

Citing *Chalk v. United States District Court*, 840 F.2d 701 (9th Cir.1988) (an otherwise qualified teacher, who was infected with HIV but had not developed AIDS, was unilaterally transferred by the school district to an administrative job), the Senate Report on the ADA states, "in the absence of a request [for accommodation], it would be inappropriate to provide an accommodation, especially where it could impact adversely on the individual." The regulations also address an employee's right to reject a reasonable accommodation:

> [A]n employer may not compel a qualified individual with a disability to accept an accommodation, where that accommodation is neither requested nor needed by the individual. However, if a necessary reasonable accommodation is refused, the individual may not be considered qualified.

29 C.F.R. § 1630.9(d). "Reassignment may not be used to limit, segregate or otherwise discriminate against employees with disabilities by forcing reassignments to undesirable positions or to designated offices or facilities." 29 C.F.R. Part 1630, App. § 1630.2(*o*).

Even if the ADA contemplates a claim by an otherwise qualified employee who is unilaterally transferred because of a perceived disability, we do not believe that plaintiff has stated such a claim in the instant case. First, there is no evidence that plaintiff was "otherwise qualified," *i.e.*, that he could perform the essential functions of the meter reader position despite his walking restriction. Contrary to plaintiff's present contention that he did not request accommodation, it is uncontroverted that because of his work-related knee injury, plaintiff was unable to read a full book of meters per shift after his knee injury on May 3, 1994, and was placed on light duty.

When plaintiff's condition was found to be permanent, rather than temporary, defendant initiated the process called for by the ADA to determine the appropriate reasonable accommodation. *See* 29 C.F.R. Part 1630, App. 1630.9 (employer begin accommodation process by evaluating the essential functions of the job and the employee's limitations).

Contrary to plaintiff's assertions, the following facts do not give rise to an inference of discrimination: (1) that the initial meeting held by defendant was without plaintiff's knowledge or presence; (2) that Mary Richardson, plaintiff's immediate supervisor, was not involved in the accommodation process; and (3) that plaintiff was given only three days to decide whether to accept one of the three vacant positions. As the court in *White* noted, the ADA requires an employer to make a threshold determination of whether a disabled employee may be accommodated before the employer meets with the employee in order to identify how best to accommodate the employee. *White*, 45 F.3d at 363. In addition, although plaintiff alludes to adjustments that could have been made by Richardson in his work route to enable him to remain in the meter reader position, he fails to present any evidence to support his assertions.

Under the ADA, we believe that, even if not specifically designated by plaintiff as a request for accommodation, knowledge by defendant of plaintiff's permanent medical restrictions and that they were preventing him from performing his job was sufficient to permit defendant to commence the reasonable accommodation process. *See Schmidt v. Safeway, Inc.*, 864 F.Supp. 991, 996–97 (D.Or.1994) (A plaintiff is not required to "speak any magic words" to invoke the protections of the ADA.). As the regulations indicate, employers are obligated to inquire about physical limitations of which they become aware: "If an employee with a known disability is having difficulty performing his or her job, an employer may inquire whether

**1358**

the employee is in need of a reasonable accommodation." 29 C.F.R. § 1630.9.

■ Even assuming plaintiff has made out a prima facie case, he has failed to offer evidence to rebut defendant's evidence that it offered him numerous reasonable accommodations. Defendant contends that because it was not possible to accommodate plaintiff's medical restrictions in the meter reader position, defendant offered plaintiff several choices as reasonable accommodations. One of those choices was to remain in the meter reader position by presenting medical evidence that he could perform the essential functions of the job, *i.e.*, walking more than four hours. Plaintiff failed to provide such evidence until March 1995, when defendant promptly reinstated him in the meter reader position, subsequently gave him a raise, and later promoted him to his present position of service person. Plaintiff cannot now complain that defendant unilaterally forced him out of the meter reader job, for which he was qualified, when he failed to present the medical evidence at the time to establish his ability to perform the essential functions of the meter reader position.

Defendant also offered plaintiff the opportunity to transfer to other positions which were within his physical restrictions. Clearly, reassignment may be considered as a reasonable accommodation. *White,* 45 F.3d at 362 (citing 29 C.F.R. § 1630.2(o)(2)(ii)). Plaintiff initially chose a warehouseman position, which would have permitted him to remain in the Mission, Kansas, area. This position would have been a promotion for plaintiff. However, when defendant approached the Union and requested that seniority be waived to permit plaintiff to take the position, the Union refused the request. Plaintiff then chose transfer to the Jeffrey Energy Center at St. Mary's.

■ Plaintiff claims that, prior to reassignment, the ADA required defendant to provide adequate rehabilitation for his knee[6] to enable him to remain in the meter reader job. We disagree. We acknowledge that reassignment has been described as the accommodation of last resort. *See* Ogletree,

Deakins, Nash, Smoak, & Stewart, Americans with Disabilities Act: Employee Rights & Employer Obligations, § 6.04[3], at 6–56 (1995) (citing 29 C.F.R. Part 1630, App. § 1630.2(o)). Nevertheless, we do not believe that the ADA requires an employer to provide rehabilitation in lieu of reassignment. Only job-related adjustments or modifications, which enable an individual to perform the duties of a particular job, are required as reasonable accommodations. 29 C.F.R. Part 1630, App. § 1630.9. An employer is not required to provide modifications which assist an individual "throughout his or her daily activities, on and off the job." *Id.; see also Schmidt v. Safeway, Inc.,* 864 F.Supp. at 996 (contrasting providing leave for rehabilitation, which is required by the ADA, with providing rehabilitation, which is not required).

■ Plaintiff also argues that defendant was required to modify the requirements of the meter reader position by reducing the number of hours plaintiff was required to walk or giving him an easy route so that plaintiff could perform the meter reader job. However, it is uncontroverted that walking over four hours per day was an essential part of the meter reader position, even for the easier routes. The ADA does not require an employer to eliminate essential functions of a job to reasonably accommodate a disabled employee. *White,* 45 F.3d at 362.

■ Plaintiff also contends that defendant should have created a position for plaintiff doing "rereads" and "can't reads." However, it is uncontroverted that those jobs were performed by a supervisor at a higher rate of pay. Therefore, creation of such a position would have effectively been a promotion for plaintiff. The ADA does not require that a disabled employee be promoted as a reasonable accommodation. *Id.*

■ Similarly, plaintiff argues that defendant should have hired him, rather than an independent contractor, to conduct leak surveys. He does not controvert that there were no vacancies in defendant's survey department, but argues that defendant should

---

**6.** Defendant did provide some rehabilitation for plaintiff, but he contends it was inadequate.

have created a job for him by hiring him, instead of hiring subcontractors, to perform some of defendant's survey work. The ADA does not require an employer to create a position or alter present business practices and relationships in order to give an employee the best accommodation or the accommodation requested by the employee, so long as the accommodation made is reasonable. *See, e.g., Eckles v. Consolidated Rail Corp.,* 890 F.Supp. 1391, 1399 (S.D.Ind.1995) (ADA does not require the employer to provide the best accommodation possible or to accommodate the employee in a certain requested manner); *Kuehl v. Wal–Mart Stores, Inc.,* 909 F.Supp. 794, 803 (D.Colo.1995) (same); *Robinson v. City of Friendswood,* 890 F.Supp. 616, 620 (S.D.Tex.1995) (best possible accommodation not required). "The employer providing the accommodation has the ultimate discretion to choose between effective accommodations, and may choose the less expensive accommodation or the accommodation that is easier for it to provide." 29 C.F.R. Part 1630, App. § 1630.9.

██ Plaintiff also contends that defendant discriminated against him by refusing to award him the building and ground maintenance position at the Jeffrey Energy Center. However, plaintiff does not controvert that the reason plaintiff did not receive the job was because he had a permanent restriction on walking more than four hours per day and defendant did not believe that plaintiff could perform some of the essential functions of the job (i.e., stand while scooping coal for eight hours). It is also uncontroverted that plaintiff did not request the building supervisor job as an accommodation. Curiously, plaintiff complains on one hand that defendant violated the Act by providing an accommodation when none was requested. Yet, on the other hand, plaintiff argues that defendant violated the Act by failing to accommodate him when he did not request accommodation. This demonstrates the incongruence of plaintiff's approach and the Catch 22 in which employers would be placed if the ADA

permitted the sort of claim plaintiff attempts to bring in the instant suit.

In conclusion, under the uncontroverted facts of this case, we do not believe that plaintiff presents a viable claim for discrimination under the ADA. Plaintiff has failed to make out a prima facie case by failing to present evidence that he was qualified, with or without accommodation, and that defendant discriminated against him. Moreover, even assuming that plaintiff has made out a prima facie case, he has failed to establish a factual question on the reasonable accommodation issue. As a matter of law, based on the uncontroverted facts in this case, defendant fulfilled its statutory obligation under the ADA to reasonably accommodate plaintiff. The mere fact that the only vacant position available was in a location less desirable to plaintiff does not make it an unreasonable accommodation, especially when the pay rate was similar and defendant offered a relocation package to defray plaintiff's moving expenses.

## II. Plaintiff's Claim of Retaliation under the ADA

██ Plaintiff also contends that defendant improperly retaliated against him because he exercised his ADA rights.[7] A claim of retaliation under the ADA is properly analyzed under the framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See, e.g., White,* 45 F.3d at 360–62 (ADA claim); *Henry v. Guest Servs., Inc.,* 902 F.Supp. 245, 251 (D.D.C.1995) (ADA retaliation claim); *Harmer v. Virginia Electric & Power Co.,* 831 F.Supp. 1300, 1307–08 (E.D.Va.1993) (same).

██ Plaintiff bears the initial burden to present a prima facie case by establishing that: (1) he engaged in a protected activity; (2) he was subjected to an adverse employment action against him; and (3) a causal connection exists between the protected ac-

7. The ADA expressly prohibits retaliation:
   No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.
   42 U.S.C. § 12203(a).

tivity and the adverse action. *See White,* 45 F.3d at 360–61. If plaintiff meets his burden, defendant is required to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* at 361. The burden then shifts back to plaintiff to present evidence that the employer's articulated reason is mere pretext. *Id.*

Assuming without deciding that plaintiff has made out a prima facie case, we proceed directly to the third prong of the analysis—pretext. Defendant has articulated legitimate, nonretaliatory reasons for each of its employment decisions and actions toward plaintiff. Plaintiff has wholly failed to come forward with evidence to create a factual question about whether those reasons are a mere pretext for retaliation. In short, there is insufficient evidence from which a reasonable jury could find that defendant retaliated against plaintiff for asserting his ADA rights. Accordingly, defendant is entitled to judgment as a matter of law on plaintiff's claim of retaliation.

IT IS THEREFORE ORDERED that defendant's motion for summary judgment (Doc. # 49) is granted.

IT IS FURTHER ORDERED that plaintiff's motion for partial summary judgment (Doc. # 44) is denied as moot.

### MEMORANDUM AND ORDER ON RECONSIDERATION

This matter is before the court on plaintiff's motion for reconsideration of our Memorandum and Order of May 13, 1996, granting defendant's motion for summary judgment (Doc. # 88). For the reasons set forth below, plaintiff's motion will be denied.

■ The decision of whether to grant or deny a motion for reconsideration is committed to the court's discretion. *See Hancock v. City of Oklahoma City,* 857 F.2d 1394, 1395 (10th Cir.1988). A motion for reconsideration is the opportunity for the court to: 1) correct manifest errors of law or fact; 2) review newly discovered evidence; or 3) review a prior decision in light of a recent change in the law. *Major v. Benton,* 647 F.2d 110, 112 (10th Cir.1981); *see also Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909

(3d Cir.1985), *cert. denied,* 476 U.S. 1171, 106 S.Ct 2895, 90 L.Ed.2d 982 (1986).

■ Appropriate circumstances for a motion to reconsider are where the court has obviously misapprehended a party's position or the facts or the law, or the court has mistakenly decided issues outside of those the parties presented for determination. *Anderson v. United Auto Workers,* 738 F.Supp. 441, 442 (D.Kan.1990); *Refrigeration Sales Co. v. Mitchell–Jackson, Inc.,* 605 F.Supp. 6, 7 (N.D.Ill.1983). A party's failure to present its strongest case in the first instance does not entitle it to a second chance in the form of a motion to reconsider. *Renfro v. City of Emporia, Kan.,* 732 F.Supp. 1116, 1117 (D.Kan.1990).

■ Under the "law of the case" doctrine, once an issue is decided by the court, it should not be reconsidered unless it is clearly erroneous or resulted in the imposition of some manifest injustice. *Id.* This doctrine is based on public policy favoring an end to litigation and encouraging finality in dispute resolution by preventing continued relitigation of issues once decided. *See Major v. Benton,* 647 F.2d at 112; *Todd Shipyards Corp. v. Auto Transp., S.A.,* 763 F.2d 745, 750 (5th Cir.1985).

In his motion for reconsideration, plaintiff sets forth numerous alleged controverted facts and urges that the court failed to properly analyze defendant's motion for summary judgment because it failed to consider the facts in the light most favorable to plaintiff. Plaintiff misconstrues our opinion—all properly supported factual allegations have been considered in the light most favorable to plaintiff. Where plaintiff failed to present an evidentiary basis for his version of the facts, properly supported uncontroverted facts as stated by defendant were considered, pursuant to Federal Rule of Civil Procedure 56 and District of Kansas Rule 56.1. Modern summary judgment jurisprudence requires precisely the analysis employed by the court. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265

(1986); *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir.1995).

Plaintiff complains that the court permitted the defendant to redefine the essential functions of the meter reader position by failing to look to the essential function form. The court fully considered the essential function form, along with all other relevant evidence, in determining that plaintiff had failed to present evidence from which a jury could find that he was qualified to perform the meter reader job at the time of his transfer to the relief operator position as an accommodation for his walking restriction.

Plaintiff continues to argue that because the essential function form for the relief operator position states that walking is required over 50% of the time, as does the essential function form for the meter reader position, he has established that he was qualified to perform the meter reader position when transferred. Plaintiff ignores that the duration requirement for walking in the two positions differs—relief operator requires an hour or less at a time, while meter reader requires over an hour at a time. More importantly, plaintiff ignores the other evidence in the record. Most significantly, plaintiff's own deposition testimony fails to establish that he was required to walk over four hours per day in the relief operator position. Yet, the record is replete with evidence that the meter reader position required continuous walking, well in excess of four hours per day.

Plaintiff's assertion that he read a full book of meters on July 12, 1994, is similarly unavailing. Plaintiff's permanent medical restriction of not walking more than four hours per day was imposed on August 22, 1994. Thus, plaintiff's ability to perform the meter reader job for one day over a month earlier does nothing to establish that he was capable of reading a full book of meters on a daily basis as of August 22, 1994.

Plaintiff also makes much of when he was informed that he could present a second medical opinion to avoid the transfer to the relief operator position, arguing that it was *not until plaintiff contacted Western's Head of Employment* that defendant consented to look at a second opinion. He does not controvert that Fuhrkin's letter of October 5, 1994, stated, "the Company will still review and evaluate a second medical opinion should you wish to provide one." Under these uncontroverted facts, the timing of defendant's offer to look at a second medical opinion does not constitute an ADA violation.

Plaintiff states that the court found that plaintiff had requested an accommodation. This mischaracterizes the court's order. What the court found is that defendant's duty to accommodate was triggered by knowledge of plaintiff's permanent medical restriction. Plaintiff complains that a medical restriction in a worker's compensation case is not a request for accommodation and that the court's interpretation in this case will allow employers to use the ADA as a weapon against employees who file worker's compensation cases. Regardless of how characterized by plaintiff, his request to be left in the meter reader position despite the uncontroverted fact that he could not regularly perform the essential function of walking an entire meter route in one day due to medically documented physical restrictions, equates with a request for accommodation under the ADA. Employers are not required to stand by with their hands tied until an employee officially requests an "ADA accommodation."

The court fully considered all of plaintiff's properly supported allegations of retaliation in its original order and has reconsidered the specific allegations highlighted by plaintiff in his motion for reconsideration. Plaintiff suggests that defendant has failed to offer a legitimate reason for reprimanding him about refusing to jump fences. He urges that because plaintiff's co-worker Fred Foster (defendant's alleged source of the information) denies making any such statement, he can establish pretext.

Next, plaintiff complains that the defendant failed to offer a legitimate, nondiscriminatory reason for not paying plaintiff's worker's compensation claim until the day before the worker's compensation hearing. Defendant responds that it handled plaintiff's worker's compensation claim pursuant to its usual practice where the employee is being treated to rule out heart attack and there is a

question about whether the injury or condition is work-related. Plaintiff suggests only that defendant received the doctor's notes several months prior to payment. However, this is not sufficient to establish that defendant's stated reason is mere pretext for retaliation.

Perhaps, the above two allegations are better discussed in terms of plaintiff's prima facie case. In short, plaintiff cannot maintain a retaliation claim based on either incident because he was not subjected to an adverse employment decision. One isolated instance of an unwarranted reprimand does not rise to the level of a cognizable retaliation claim. Similarly, the alleged delay in payment of the worker's compensation claim does not constitute an adverse employment decision.

Finally, plaintiff complains that defendant retaliated against him by not providing him a truck and by suspending him until he provided a medical release from a psychologist to return to work. Defendant offered evidence that it followed standard procedures with respect to each of these allegations. Plaintiff claims that he was treated differently than other employees, but does not offer any evidence to support his assertion. First, he mischaracterizes the record with respect to Mary Richardson's testimony about truck assignment procedures. Second, in comparing defendant's treatment of him with that of other employees in regard to the requirement that he provide a medical release to return to work, plaintiff does not address the relative seriousness of his condition. Defendant states that it considered plaintiff's condition so serious as to require a medical release before he could return to work. Plaintiff has not offered any evidence that this asserted reason is mere pretext.

IT IS THEREFORE ORDERED that plaintiff's motion for reconsideration (Doc. # 88) is denied.