**KEYS YOUTH SERVICES, INC., Plaintiff,**

v.

**CITY OF OLATHE, KANSAS, Larry Campbell, John Bacon, Bill Trout, Michael Copeland, and Gary Mitchell, Defendants.**

No. CIV.A. 98–2398–KHV.

United States District Court,
D. Kansas.

July 12, 1999.

James H. Ensz, Sarah G. Madden, Ensz & Jester, P.C., Kansas City, MO, for plaintiff.

Anthony F. Rupp, Andrew M. DeMarea, Shughart, Thomson & Kilroy, Overland Park, KS, for defendants.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

This matter comes before the Court on the *Motion For Reconsideration of Defendant City of Olathe* (Doc. # 57) filed June 30, 1999. The City asks the Court to reconsider certain aspects of the *Memorandum and Order* (Doc. # 54) filed June 23, 1999, specifically: (1) the Court's finding that when it denied Keys' request to operate a Level V group home, the City violated the Fair Housing Act by discriminating against Keys on the basis of familial status; and (2) its further finding that based on the handicapped status of potential residents, the FHA applies.

 The Court has discretion whether to grant or deny a motion to reconsider. *See Hancock v. City of Okla. City,* 857 F.2d 1394, 1395 (10th Cir.1988). The Court may recognize any one of three grounds justifying reconsideration: an intervening change in controlling law, availability of new evidence, or the need to correct clear error or prevent manifest injustice. *See Major v. Benton,* 647 F.2d 110, 112 (10th Cir.1981); *Burnett v. Western Resources, Inc.,* 929 F.Supp. 1349, 1360 (D.Kan.1996). A motion to reconsider is not a second opportunity for the losing party to make its strongest case, to rehash arguments, or to dress up arguments that previously failed. *See Voelkel v. General Motors Corp.,* 846 F.Supp. 1482, 1483 (D.Kan.), *aff'd,* 43 F.3d 1484, 1994 WL 708220 (10th Cir.1994). Such motions are not appropriate if the movant only wants the Court to revisit issues already addressed or to hear new arguments or supporting facts that could have been presented originally. *See Van Skiver v. United States,* 952 F.2d 1241, 1243 (10th Cir. 1991).

## ANALYSIS

### A. *Familial Status*

 Defendant asserts that the Court erred in concluding that "[w]hen the City denied the special use permit, it relied upon an ordinance which discriminated against Keys' residents on the basis of familial status." *See Memorandum And Order* (Doc. # 54) p. 38. Defendant points out that the Court also stated that

> at the hearings before the Planning Commission and the City Council, Keys did not directly argue that it had the parental-type custody set forth in the FHA family status provision. Thus, the Planning Commission's denial of the special use permit for ten residents cannot be seen as overt discrimination on the basis of familial status.

*Id.* at p. 36. Defendant goes on to argue that the minutes of the meetings do not suggest any discrimination based upon the familial status of proposed residents.

The Court agrees that the record contains no evidence that the City expressly considered the family status of proposed residents when making the decision. But the Planning Commission and City Council discriminated against Keys on the basis of family status when they relied upon the definitions of residential care facilities [UDO 18.54.020(PP) ] and group board home for minors [UDO 18.06.305], as well as the definition of family [UDO 18.04.240]. These ordinances do not extend to Keys residents the familial status protection to which the Court has determined they are entitled.

In order to clarify the ruling, however, the Court modifies the first sentence in the first full paragraph of page 38 of the *Memorandum and Order* (Doc. # 54)[52 F.Supp.2d 1285 at 1307, first column, first full paragraph] to read as follows: "In requiring Keys to go through the special use permit process, the City relied in part upon an ordinance which discriminated against Keys on the basis of familial status."

The Court also agrees with defendant that plaintiff could and should have more clearly made a direct attack on the Olathe zoning scheme as facially discriminating against Keys residents on the basis of familial status. As defendant points out, the complaint does not expressly assert, in

so many words, that Keys is a "single family." Nonetheless, Keys asserted in the complaint that it was "discriminated against because of [ ] residents' 'familial' status." *Complaint* (Doc. # 1) filed September 3, 1998, ¶ 25. Further, plaintiff asserted that it is entitled to a permit, and in fact should not even have to go through the permit process. Thus, despite defendant's protestations, this issue has been in the case from the beginning.

Defendant argues that the Court's opinion suggests that if single-family residents do not need to get special use permits, then any regulation which requires group homes for children to go through the special use permit process violates the Fair Housing Act. The City asserts that such a finding would invalidate zoning ordinances nationwide. The City, however, reads the Court's ruling too broadly. Only group homes in which residents meet the FHA familial status definition are entitled to the same zoning treatment as single-family residences. The Court has not ruled whether such homes are subject to state licensing regulations.

The City also cites FHA cases which uphold limits on the number of persons who may occupy a single-family residence. *See Oxford House-C v. City of St. Louis,* 77 F.3d 249, 252–53 (8th Cir.1996) (cities have legitimate interest in decreasing congestion, traffic, and noise in residential areas, and ordinances restricting number of unrelated people who may occupy single-family residence are reasonably related to those goals; cities need not assert specific reason for choosing number of unrelated person used to define "family"); *Smith & Lee Assoc., Inc. v. City of Taylor,* 102 F.3d 781, 792 (6th Cir.1996) (ordinance defining "family" as including six or fewer unrelated persons is not alone proof of discriminatory animus against handicapped residents). But as plaintiff points out, the cases upon which the City relies address ordinances which set out the number of unrelated individuals who can reside in a single family residential zone, and address whether such zoning—as ap-

plied—discriminates against handicapped persons.

Defendant also argues that even if the City's ordinances facially discriminate against Keys residents on the basis of family status, this only establishes a prima facie case of discrimination and the City must be allowed to rebut the initial showing by presenting legitimate nondiscriminatory reasons for the ordinances, namely, public safety and property values. *See Bangerter v. Orem City Corp.,* 46 F.3d 1491, 1500–01 (10th Cir.1995). But as plaintiff points out however, *Bangerter* dealt with an ordinance that treated handicapped individuals differently from all other groups. The Tenth Circuit stated that factual issues remained whether the differential treatment of handicapped individuals was for their benefit; if so, the defendant's actions, though discriminatory, could be upheld. By contrast, the City ordinance scheme in this case unquestionably discriminates against Keys residents in violation of the FHA familial status protection. *See Kormoczy v. Secretary of HUD,* 53 F.3d 821, 823–24 (7th Cir.1995) ("Where direct evidence is used to show that a housing decision was made in violation of the statute, the burden shifting analysis is inapposite.").

The City also asserts that this Court's ruling will have far-reaching impact on zoning schemes throughout the United States. First, as noted above, the Court's ruling is not as broad as defendant posits. Further, to the extent that the Court's decision in this case has such impact, the Court must apply the plain language of the FHA.

Finally, the City asserts that on this record a finding in favor of plaintiff is inappropriate because plaintiff has "shotgunned" its arguments against the "ordinances" of the City in general. A review of defendant's summary judgment briefs indicates, however, that defendant was on notice of plaintiff's claim that the city zoning scheme violated the familial status protection of the FHA.

## B. *Handicap Discrimination Claims*

■ Finally, defendant asserts that the Court erred in finding that the potential residents were entitled to "handicapped" protection under the FHA. The City points to recent Supreme Court cases which require courts to make an individual inquiry to determine whether specific individuals are entitled to handicapped status protections under the ADA. *See Albertsons, Inc., v. Kirkingburg,* —— U.S. ——, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999); *Sutton v. United Airlines,* —— U.S. ——, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). As plaintiff points out, however, this Court's ruling is based on a finding that at least some of the potential residents will be handicapped. Recent Supreme Court cases under the ADA do not alter the Court's analysis on this point. The record is clear that at least some potential residents will be learning disabled, and entitled to FHA handicapped protection.

**IT IS THEREFORE ORDERED** that the *Motion For Reconsideration of Defendant City of Olathe* (Doc. # 57) filed June 30, 1999, be and hereby is **OVERRULED,** except for the following two modifications:

1. The Court modifies the first sentence in the first full paragraph of page 38 of the *Memorandum and Order* (Doc. # 54) filed June 23, 1999, to read as follows: "In requiring Keys to go through the special use permit process, the City relied in part upon an ordinance which discriminated against Keys on the basis of familial status."

2. The Court further finds that under the familial status protection of the Fair Housing Act, Keys Youth Services is entitled to occupy the residence at 605 East Harold in Olathe, Kansas as a Level V group home for ten youths.