Jacqueline M. DOEBELE, Plaintiff,

v.

SPRINT CORPORATION, et al., Defendants.

No. CIV. A. 00–2053–KHV.

United States District Court, D. Kansas.

Oct. 19, 2001.

Dennis E. Egan, Claudio E. Molteni, The Popham Law Firm, P.C., Kansas City, MO, John B. Gage, II, The Gage Law Firm, P.C., Overland Park, KS, for Plaintiff.

Karen R. Glickstein, Shughart, Thomson & Kilroy, P.C., Kansas City, MO, Robert A. Bye, Patricia A. Mullins, Foland & Wickens, P.C., Kansas City, MO, for Defendants.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

Jacqueline M. Doebele brought suit against Sprint Corporation and Sprint PCS (collectively referred to as "Sprint") for violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2615. She also sought damages for wrongful discharge. On August 6, 2001, the Court granted defendants' motion for summary judgment. This matter comes before the Court on Plaintiff's Motion (And Memorandum In Support Of Motion) To Alter Or Amend Judgment Or, In The Alternative, For Relief From Judgment (Doc. # 125) filed August 20, 2001. For reasons stated below, plaintiff's motion is overruled.

## Factual Background

The Court previously set out the relevant facts in this case. See Memorandum And Order (Doc. # 123) filed August 6, 2001. For purposes of this motion, the Court briefly summarizes its prior discussion.

From September 1996 to April 20, 1998, plaintiff worked as a financial analyst at Sprint. Lorrie McCurdy began supervising plaintiff in March 1997. Bridget Carson was McCurdy's immediate supervisor. During the spring of 1997, plaintiff began to feel uncomfortable at work. Plaintiff believed that a group of people at Sprint were being harassed or discriminated against and co-workers told plaintiff that negative comments were being made concerning her character and mental stability.

On March 23, 1998, McCurdy gave plaintiff a verbal reminder for receiving inappropriate emails, tardiness and engaging in inappropriate behavior in the workplace. On July 21, 1998, plaintiff met with Abigail Dillard, the Equal Employment Opportunity and Affirmative Action Manager for defendants, to discuss plaintiff's belief that her work environment was hostile. On July 22, 1998, McCurdy placed plaintiff on written warning, the second step in the corrective action process, on account of confrontational incidents between plaintiff and other co-workers (in addition to incidents with McCurdy) and the fact that plaintiff had contacted other co-workers at home after hours to discuss work-related issues. On July 23, 1998, plaintiff received a referral to Dr. Leonel Urdaneta, a board-certified psychiatrist, and Dr. Urdaneta placed her on short-term disability leave until September 28, 1998. In August of 1998, Dr. Urdaneta diagnosed plaintiff with bipolar disorder and attention deficit hyperactivity disorder and began treating her with medication. After plaintiff returned to work, she was absent 11 days between September 28 and December 4. On October 29, 1998, Linda Weidner, plaintiff's co-worker, sent McCurdy a memo which contended that McCurdy had lost all objectivity when it came to issues involving plaintiff. On December 4, 1998, McCurdy and Carson put plaintiff on final written warning for attendance issues and inappropriate behavior in the workplace. After she received her final written warning, plaintiff called Dillard to complain that she was being discriminated against. On December 9, 1998, Dr. Urdaneta wrote Sprint a letter which asked that plaintiff be placed on short-term disability leave retroactive to December 7, 1998. Ultimately, he extended plaintiff's leave to February 23, 1999. Plaintiff returned to work on March 11, 1999. On April 20, 1999, five weeks later, McCurdy and Carson terminated plaintiff's employment for continued attendance problems and personal effectiveness issues.[1]

Plaintiff alleged that she suffered from bipolar disorder, hypothyroidism and attention deficit hyperactivity disorder. Plaintiff claimed that defendants discriminated against her in violation of the ADA, 42 U.S.C. § 12101 et seq. (Count I); retaliated against her for taking leave under the FMLA, 29 U.S.C. § 2615 (Count III);

---

1. In her opposition brief, plaintiff cited testimony from Dillard that personal effectiveness "basically deals with how well you get along with others, your ability to work as a team … how you personally interact with other people, customers, whatever, in the work environment." Plaintiff's Memorandum In Opposition To Defendants' Motion For Summary Judgment (Doc. # 115) filed June 21, 2001 ("Plaintiff's Opposition Memorandum") at 22–23 ¶ 72. "Inappropriate behavior" is apparently a factor in personal effectiveness. See Exhibit M in Vol. I Of Defendants' Summary Judgment Exhibits (Doc. # 105) filed June 1, 2001 (inappropriate behavior issues cited as impacting personal effectiveness in plaintiff's verbal reminder).

and wrongfully discharged her in violation of the ADA, 42 U.S.C. § 12203(b), and the Kansas Worker's Compensation Act, K.S.A. § 44–501 et seq. (Count IV). On August 6, 2001, the Court sustained defendants' motion for summary judgment. The Court held that (1) plaintiff's ADA discrimination claim failed as a matter of law because plaintiff was not a qualified individual with a disability; (2) plaintiff's ADA and FMLA retaliation claims failed because plaintiff had not demonstrated a genuine issue of material fact whether defendants' stated reasons for termination were pretextual; and (3) plaintiff's worker's compensation retaliation claim failed because mental injuries without a physical injury are not compensable under Kansas law.

Plaintiff now seeks relief from judgment under Rule 60(a), Fed.R.Civ.P., because counsel inadvertently failed to attach to her summary judgment memorandum critical portions of Dillard's deposition testimony. Plaintiff also argues that the Court erred by (1) considering facts and arguments that were first contained in the reply memorandum in support of defendants' summary judgment motion, without giving plaintiff the opportunity to respond; (2) failing to find a genuine issues of material fact whether plaintiff was a qualified individual with a disability; and (3) weighing the evidence, engaging in credibility determinations and ignoring the impact of *Reeves v. Sanderson Plumbing*, 530 U.S.

133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), in finding that plaintiff had not raised a material dispute as to pretext.

**Analysis**

**I. Rule 60(a)**

 Plaintiff seeks relief from judgment under Fed.R.Civ.P. 60(a) because counsel inadvertently neglected to attach to plaintiff's brief in opposition to defendants' motion for summary judgment a potion of Abigail Dillard's deposition testimony. Under Rule 60(a), "[c]lerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders." Generally, a Rule 60(a) correction involves a mistake "mechanical in nature which is apparent on the record and which does not involve a legal decision or judgment by an attorney." *Fine v. U.S. Dept. of Energy, Office of Inspector General*, 830 F.Supp. 570, 573 (D.N.M.1993) (citing *In re Merry Queen Transfer Corp.*, 266 F.Supp. 605, 607 (E.D.N.Y.1967)).

This issue arises because in two instances, the Court held that plaintiff had not sufficiently controverted defendants' statement of facts by attaching the deposition transcript which was necessary to demonstrate a genuine issue of material fact.[2] In another instance, plaintiff failed to attach the deposition transcript which supported

---

**2.** Under D. Kan. Rule 56.1(d), "[w]here facts referred to in an affidavit or declarations are contained in another document, such as a deposition, interrogatory answer, or admission, a copy of the relevant excerpt from the document shall be attached." Since plaintiff did not comply with this rule, the Court deemed admitted the facts set forth in defendants' memorandum. See D. Kan. Rule 56.1(a) ("[a]ll material facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the state-

ment of the opposing party"); see also *Thompson v. City of Lawrence, Kansas*, Nos. Civ.A.93–2253–KHV, 93–2310–KHV, 1994 WL 262598, at *2 (D.Kan. May 19, 1994) (plaintiffs who purported to controvert moving party's statements of undisputed facts but failed to cite record support failed to establish genuine issue of material fact under predecessor to D. Kan. Rule 56.1). In addition, plaintiff failed to support one of her own proffered statements of undisputed fact. See D. Kan. Rule 56.1(b)(2) ("[i]f the party opposing sum-

her proposed undisputed fact. In its pre-

mary judgment relies on any facts not contained in movant's memorandum, that party shall set forth each additional fact in a separately numbered paragraph, supported by references to the record"). The factual statements which plaintiff failed to substantiate through record evidence were as follows:

A. Plaintiff controverted in part defendants' proffered statement of fact that "[p]laintiff was placed on Final Written Warning on December 4, 1998, for using more than her allotted unscheduled Time Pool and for inappropriate workplace behavior," by alleging that:

The stated reasons for Plaintiff's final written warning on December 4, 1998 were attendance issues and inappropriate behavior in the workplace. (Stipulation 5(1), Pre–Trial Order, Doc. 101). Kinney testified the attendance related corrective action policy is not 100% mandatory and that 'nothing is black and white.' (Kinney Deposition, p. 107, lines 18–23). **Dillard testified that she thought the time pool issue as applied to Doebele was a 'sham issue' because, as she put it, 'we were dealing with an ADA issue and I was just concerned that we were placing the company in a position of high risk by taking this position on this.'** (Dillard Deposition, p. 213, lines 6–19).

Memorandum In Support Of Defendants Sprint/United Management Co. And Sprint Spectrum, L.P.'s Motion For Summary Judgment (Doc. # 104) filed June 1, 2001 ("Defendants' Support Memorandum") at 11 ¶ 80; Plaintiff's Opposition Memorandum (Doc. # 115) at 9 ¶ 80 (emphasis added). Plaintiff did not provide the deposition testimony which contained Dillard's statement. In this case, however, there was no question that plaintiff had violated the time pool policy. Dillard did not dispute that plaintiff had attendance problems and she believed that an ADA employee could be placed on corrective action for attendance issues. She apparently believed that, at least in this case, the employee's attendance problems should be subordinated to possible ADA issues.

B. Plaintiff controverted in part defendants' proffered statement of fact that "[p]laintiff did not keep track of her absences to determine whether they were scheduled or unscheduled, although she knew that she had exhausted her Time Pool hours and does not believe her supervisors had any reason to make up that fact," by stating that:

As of April 4, 1999, McCurdy noted that Doebele 'has plenty of 1999 time pool.' (Carson Deposition Exhibit 74, attached as Exhibit Z to Plaintiff's Memorandum). Doebele also testified that she is not sure that she had exhausted all of her time pool and also testified that it was never explained to her by her managers which days were defined as unscheduled and which ones were scheduled absences. (Doebele Deposition, p. 239, line 24 to p. 240, line 18). **Dillard testified that she had worked on cases where attendance issues were more serious than Doebele's and people had not been put on corrective action yet; she further testified that she 'had a view that Lorrie McCurdy and Brigid Carson didn't have because I worked within the organization on lots of attendance issues and when corrective action was appropriate for those so I had a better view of what we were doing from a consistency standpoint across those areas that I was responsible for.'** (Dillard Deposition, p. 218 line 21 to p. 219, line 13).

Defendants' Support Memorandum (Doc. # 104) at 11–12 ¶ 81; Plaintiff's Opposition Memorandum (Doc. # 115) at 9–10 ¶ 81 (emphasis added). Plaintiff did not provide the deposition testimony which contained Dillard's comments. In that testimony, however, Dillard did not dispute that plaintiff had attendance issues, that plaintiff had the department, and that McCurdy and Carson saw plaintiff's failure to show up and be on time for work as a continual disruption to the work flow in their department. While Dillard may have been aware of the fact that other Sprint employees had worse attendance problems, she did not claim that those employees were similarly situated to plaintiff in terms of attendance and behavioral issues. Aside from her personal belief and Dillard's statement (which only partially addresses the issue), plaintiff provided no evidence that defendants treated her differently than similarly situated employees.

C. Plaintiff offered the following in her statement of additional undisputed facts: "Dillard testified that the compilation of documents titled 'Abbie Dillard HR manager File' produced in this litigation is not complete. (Dillard Deposition, p. 23, line 22 to p. 24, line 25)." Plaintiff's Opposition Memorandum (Doc. # 115) at 22 ¶ 68. Even if Dillard's personnel files were not complete, plaintiff fails to state how that af-

vious order, the Court noted that even if it considered plaintiff's representations about the content of the deposition transcript, the ruling on defendants' summary judgment motion would not change. Now that the Court has had an opportunity to review the deposition transcripts, it is clear that Dillard's testimony does not justify a different ruling. Plaintiff's motion for relief from judgment under Rule 60(b) is therefore denied.

## II. Rule 59(e)

■ A motion to alter or amend judgment under Rule 59(e) is essentially a motion for reconsideration. See *Schweitzer-Reschke v. Avnet, Inc.*, 881 F.Supp. 530, 532 (D.Kan.1995). The Court has discretion whether to grant or deny a motion to reconsider. See *Hancock v. City of Okla. City*, 857 F.2d 1394, 1395 (10th Cir.1988). The Court may recognize any one of three grounds justifying reconsideration: an intervening change in controlling law, availability of new evidence, or the need to correct clear error or prevent manifest injustice. See *Major v. Benton*, 647 F.2d 110, 112 (10th Cir.1981); *Burnett v. W. Res., Inc.*, 929 F.Supp. 1349, 1360 (D.Kan. 1996). A motion to reconsider is not a second opportunity for the losing party to make its strongest case, to rehash arguments, or to dress up arguments that previously failed. See *Voelkel v. Gen. Motors Corp.*, 846 F.Supp. 1482, 1483 (D.Kan.

1994). Such motions are not appropriate if the movant only wants the Court to revisit issues already addressed or to hear new arguments or supporting facts that could have been presented originally. See *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir.1991). Plaintiff does not argue that an intervening change in the law or new evidence dictates a change in the Court's ruling; she apparently contends that the Court's decision was clear error or resulted in manifest injustice.

### A. Consideration Of New Facts And Arguments In Defendants' Reply Brief

■ Plaintiff argues that the Court erred by considering new facts and arguments that were first contained in the reply memorandum in support of defendants' summary judgment motion, without giving her the chance to respond. Defendants' reply memorandum contained five new affidavits with accompanying exhibits. Plaintiff moved to file a sur-reply, arguing that she should be given a chance to respond to these new arguments and evidence.[3] The Court overruled plaintiff's motion, stating that it had carefully examined the materials in defendants' reply brief and that since it was not necessary for the Court to rely on any of the allegedly new arguments in its analysis, a sur-reply was not necessary.[4] See Memorandum And Order (Doc. # 123) at 24. De-

---

fected her case or would have provided additional evidence in support of her claims.

**3.** Even now, plaintiff does not state what evidence she would have presented in her proposed sur-reply, and she has not shown that it would have made a colorable difference in the outcome of defendants' summary judgment motion.

**4.** Plaintiff argued that defendants' reply contained substantial new material in the form of five new affidavits and attached exhibits and that defendants advanced new reasons to reject plaintiff's evidence of pretext. Plaintiff,

however, did not identify the allegedly "new" reasons.

In their initial summary judgment brief, defendants asserted that plaintiff's discrimination and retaliation claims must fail because she could not show that their stated reasons for termination (attendance issues and personal effectiveness problems) were pretextual. In her opposition, plaintiff cited testimony from Abigail Dillard which allegedly cast doubt on the stated reasons. In the reply, defendants unsurprisingly responded to Dillard's testimony.

spite the Court's statement, plaintiff cites 15 specific instances in which the Court purportedly relied on new arguments and material in defendants' reply brief. Defendants argue that (1) the material which the Court utilized was not new legal argument, but additional factual support for arguments that defendants made in their initial brief; (2) the Court did not rely on new material in its analysis; and (3) the material was the subject of discovery and was not new to plaintiff.

As to most of the materials, defendants' first argument is well taken. Plaintiff argues that defendants submitted new reasons to reject plaintiff's pretext claim and cast doubt on Dillard's testimony. Plaintiff does not identify these purportedly new reasons, however, and the Court does not discern that it relied on "new" argument that was not present in defendants' initial brief.

▮ Plaintiff relies on *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159 (10th Cir.1998), for the proposition that the Court may not rely on new evidence contained in a reply brief. In *Beaird*, defendant apparently used its reply not only to respond to plaintiff's opposition, but also to advance an altogether new reason to grant summary judgment. The Tenth Circuit did not determine whether the district court had improperly relied on new argument, because it overruled the district court's summary

judgment ruling on other grounds. While *Beaird* is somewhat instructive, it does not address the situation at hand—the use of additional evidence to support argument previously advanced. "Where the reply affidavit merely responds to matters placed in issue by the opposition brief and does not spring upon the opposing party new reasons for the entry of summary judgment, reply papers—both briefs and affidavits—may properly address those issues." *Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1134 (7th Cir.1996) (quoting *Baugh v. City of Milwaukee*, 823 F.Supp. 1452, 1457 (E.D.Wis.1993)); see also *Glickman v. Home Ins. Co.*, No. 93–1421–PFK, 1994 WL 324554 (D.Kan. June 29, 1994) (court should consider new evidence in reply which is directly responsive to evidence in opposition brief). With regard to plaintiff's argument that defendants improperly attacked Dillard's testimony in their reply brief, defendants were well within their rights to contest plaintiff's proffered facts regarding Dillard's interaction with plaintiff's supervisors.

The vast majority of the "new" material which the Court considered was additional factual support for legal argument set forth in defendants' initial summary judgment brief. Moreover, in several instances, plaintiff stipulated to the contested material in the first pretrial order or included it in her own response materials.[5] In addi-

---

In her motion for reconsideration, plaintiff asserts that in their reply defendants waged an attack on Dillard's credibility. This argument is disingenuous, considering the fact that defendants could only have attacked Dillard's credibility in their reply because her testimony first appeared in plaintiff's opposition. Defendants did not deviate from their original argument that plaintiff had failed to cast doubt on the stated reasons for termination.

In their reply brief, defendants advanced only one argument that might be considered new. They submitted affidavits from Roosevelt Draine and Bonita Holland to explain the

delay between the dates of their hostile interactions with plaintiff and the dates of their written documentation about the incidents to McCurdy. In its ruling, the Court did not consider this argument or the accompanying evidence.

5. The first pretrial order (Doc. # 101) was entered on June 1, 2001. Plaintiff later moved to amend the pretrial order to add an ADA retaliation and an amended pretrial order which included these claims (Doc. # 118) was entered on July 2, 2001. The stipulated facts were identical in both orders.

tion, some of the purportedly new material was contained in defendants' initial brief and plaintiff had ample opportunity to respond to it. Evidence to which plaintiff stipulated, which plaintiff included in her materials, or which defendants included in their initial brief is not "new" material for purposes of this analysis.

The Court examines in turn each judicial finding which purportedly relied on new argument and evidence from defendants' reply brief.

1. As early as October 15, 1997, at plaintiff's first annual performance review, McCurdy counseled her that arriving late to meetings exhibited poor leadership skills. On March 3, 1998, McCurdy admonished plaintiff about tardiness. Plaintiff got a verbal reminder for tardiness on March 23, 1998. When plaintiff returned from FMLA leave on September 28, 1998, her attendance issues became even more pronounced. Plaintiff missed work from September 30 to October 2. On October 6, 1998, McCurdy admonished plaintiff about attendance issues. Plaintiff missed work on October 12 and 13, 1998. On November 4, 1998, plaintiff came in after noon. Plaintiff missed work on November 6, 11 and 12, 1998. On November 23, plaintiff came in after noon. Plaintiff missed work from November 30 through December 2, 1998. On December 3, 1998, plaintiff went to work after noon. On December 4, 1998, McCurdy and Carson put plaintiff on final written warning for attendance issues (along with inappropriate behavior issues). Plaintiff apparently did not go to work on December 7 or 8, 1998, so Dr. Urdaneta asked that her short-term disability leave be made retroactive to those days. Plaintiff returned to work on March 11, 1999, but she missed work on March 29, March 31 and April 1, 1999. On April 5 and 9, 1999, plaintiff was late. On April 9, 1999, McCurdy met with plaintiff to discuss ongoing attendance issues. Plaintiff was late

on April 13, 1999 and missed work altogether on April 16, 1999. On April 20, 1999, McCurdy and Carson terminated plaintiff. (Memorandum And Order (Doc. # 123) at 42 n. 32.)

This information was contained in a footnote to the Court's statement that the "evidence that plaintiff had serious attendance problems was overwhelming and undisputed." Memorandum And Order (Doc. # 115) at 42. Plaintiff argues that these factual findings consist almost exclusively of factual information put into the record by defendants' reply memorandum.

Except for the exact dates of plaintiff's absences after her second disability leave, the above facts are supported by the exhibits to defendants' motion for summary judgment and plaintiff's opposition brief. See Exhibit M in Vol. I Of Defendants' Summary Judgment Exhibits (Doc. # 105) filed June 1, 2001; Plaintiff's Opposition Memorandum (Doc. # 115) at 7 ¶ 65 and 9 ¶ 80, Exhibit I at 35:16–19, Exhibit R and Exhibit Z. Plaintiff is correct in noting that the specific dates of her absences after her second disability leave (March 29 through April 1 and April 16, 1999) were contained only in defendants' reply brief. Although she was clearly on notice that excessive absenteeism was a stated reason for termination, plaintiff's opposition brief did not address any of the attendance issues listed above. Citation of this information was not prejudicial to plaintiff.

2. On October 15, 1997, McCurdy gave plaintiff her first annual performance review, for the period covering October 1996 to 1997, and plaintiff received a four percent merit increase. (Memorandum And Order (Doc. # 123) at 5.)

In the pretrial order, which was entered before plaintiff responded to defendants' summary judgment motion, plaintiff stipulated that McCurdy gave plaintiff her first annual performance review on October 15,

1997. See Pretrial Order (Doc. # 101) filed June 1, 2001 at 14 ¶ b. Also, plaintiff's opposition memorandum cited McCurdy's deposition testimony that McCurdy gave plaintiff a performance evaluation on October 15, 1997. See Exhibit E in Plaintiff's Opposition Memorandum (Doc. # 115) at 81:4–22. While plaintiff's brief did not specifically disclose the four percent merit increase, her response discussed the fact that she had received merit increases. The Court's reference to the exact amount of the merit increase does not go beyond the scope of the argument presented in the parties' original briefs, and was not material to the Court's ruling.

3. McCurdy told plaintiff that she was not perceived as a team player, that she had difficulty conveying her ideas to a group, that she overanalyzed situations and that she occasionally hesitated to make suggestions—leading others to believe that she did not know much about her job. (Memorandum And Order (Doc. # 123) at 5.)

This statement delineated a discussion between McCurdy and plaintiff after plaintiff's initial performance review on October 15, 1997. Defendants tendered the information to balance plaintiff's claim that she "[met] objectives" in McCurdy's performance review. See Exhibit F(1) and Exhibit I in Defendants' Reply Memorandum (Doc. # 119) filed July 2, 2001. This material suggested specific ways in which plaintiff's performance was not optimal and McCurdy's comments regarding plaintiff's difficulty communicating and her ability to be a team player are relevant to one of defendants' proffered reasons for termination—lack of personal effectiveness. In any event, the inclusion of this material was not prejudicial to plaintiff because it was not mentioned after the statement of undisputed facts and the Court did not rely on it in its analysis.

4. McCurdy also told plaintiff that she regularly arrived late to scheduled meetings and exhibited poor leadership skills. (Memorandum And Order (Doc. # 123) at 5.)

This statement was supported by exhibits attached to defendants' initial brief. See Exhibit A at 120:9–11 and Exhibit M in Vol. I Of Defendants' Summary Judgment Exhibits (Doc. # 105) filed June 1, 2001.

5. McCurdy's documentation indicated that plaintiff's [performance review] took three hours and that '[t]he constant maintenance required for one employee is astronomical in comparison to the rest of my staff and the sad part is that it is not getting any better.' (Memorandum And Order (Doc. # 123) at 5.)

This statement was contained in McCurdy's notes following plaintiff's initial performance review on October 15, 1997. It was not contained in defendants' initial brief or plaintiff's response. Plaintiff's opposition presented the gist of this material, however, when it cited Dillard's deposition testimony that McCurdy and Carson believed plaintiff took up too much time in comparison to the rest of their staff and that was one reason why they wanted to get rid of her. See Exhibit H in Plaintiff's Opposition Memorandum (Doc. # 115) at 89:6–7 (McCurdy and Carson "thought they were spending way too much time managing" plaintiff). The statement in defendants' reply brief supported plaintiff's theory regarding the reason why McCurdy and Carson wanted to terminate her. The Court's citation of this material was not prejudicial or dispositive.

6. From January through March of 1998, McCurdy documented several incidents in which she believed that plaintiff had instigated confrontational meetings. (Memorandum And Order (Doc. # 123) at 6.)

In her opposition brief, plaintiff included a memorandum from McCurdy which summarizes these incidents. See Exhibit R in Plaintiff's Opposition Memorandum (Doc. # 115) at 4–5.

7. On January 5, 1998, plaintiff asked to speak to McCurdy about a work issue. Plaintiff told McCurdy that she would appreciate it if McCurdy would refrain from asking questions of Linda Wolf, who was on plaintiff's staff, and instead talk directly to her. McCurdy responded that she had merely asked Wolf a question because plaintiff was out. (Memorandum And Order (Doc. # 123) at 6.)

In her opposition memorandum, plaintiff included a memorandum from McCurdy which alluded to this incident. In particular, the memorandum noted that "[d]ocumentation of confrontational meetings includes ... Lorrie McCurdy on January 5, 1998 when [she] had been talking to Linda Wolf instead of going through Jacqueline." Exhibit R in Plaintiff's Opposition Memorandum (Doc. # 115) at 4.

8. On January 9, 1998, Linda Weidner, a recently-promoted senior analyst who worked with plaintiff in the Tables Group, told McCurdy that she had had a confrontational meeting with plaintiff. Plaintiff had apparently told Weidner that she did not want her to speak to plaintiff's staff. (Memorandum And Order (Doc. # 123) at 6.)

Plaintiff's opposition memorandum included a memorandum from McCurdy which alluded to an incident with Weidner. McCurdy noted that "[d]ocumentation of confrontational meetings includes ... Linda Weidner in January when she had been talking directly to Linda Wolf instead of going through Jacqueline." Exhibit R in Plaintiff's Opposition Memorandum (Doc. # 115) at 4. Defendants included a section of plaintiff's deposition testimony which discussed the fact that Linda Weidner had been promoted to senior analyst. See Ex-

hibit A in Vol. I Of Defendants' Summary Judgment Exhibits (Doc. # 105) at 131:9–14.

9. On February 25, 1998, plaintiff scheduled a one hour meeting with McCurdy. The meeting started well, but plaintiff became agitated and defensive when McCurdy asked her where she was on a project for which she had received an extension. Plaintiff expressed hostility because Weidner had been promoted to senior analyst and she had not. When McCurdy's meeting room reservation expired at the end of the hour, plaintiff told her that they needed to continue their meeting at the front of the offices because plaintiff still had issues. McCurdy could not accommodate this request because she had another meeting and plaintiff became angry and stormed out of the room. (Memorandum And Order (Doc. # 123) at 6.)

As with the above statement, plaintiff's opposition brief contained evidence which alluded to this incident. Defendants fleshed it out in their reply. Plaintiff included a memorandum from McCurdy which mentioned to an incident with Weidner, and noted that "[d]ocumentation of confrontational meetings includes ... February 25, 1998 when Jacqueline wanted to meet to discuss issues." Exhibit R in Plaintiff's Opposition Memorandum (Doc. # 115) at 4. Plaintiff is correct that the only in-depth explanation of this meeting was in defendants' reply memorandum. She was on notice, however, that McCurdy believed that she had had a confrontational meeting with her on February 25, 1998. The Court relied on the fact of the confrontational meeting, not the actual details of the exchange. The inclusion of this material in the Court's order was not prejudicial to plaintiff.

10. On March 3, 1998, McCurdy left work early due to illness and she asked

Todd Feighner, plaintiff's former supervisor, to give plaintiff her Short Term Incentive ("STI") check and tell her that McCurdy would explain the bonus calculation the next day. Plaintiff asked Feighner several times for the bonus calculation sheet, and she sent another supervisor an email which demanded the information immediately. The next day McCurdy met with plaintiff for an hour and a half to discuss the STI check. Plaintiff disagreed with McCurdy's calculation of her bonus and asked to speak with Carson. McCurdy mentioned that tardiness had been an issue in the past, as reflected in her performance review of October 1997; that it was still an issue; and that it affected her bonus. Plaintiff stated that she disagreed with her performance review and had never signed it because she did not want it to be a part of her file. McCurdy explained that the review would be a part of plaintiff's file regardless whether she signed it. (Memorandum And Order (Doc. # 123) at 6–7.)

A part of this material was in defendant's initial memorandum which contained a written version of plaintiff's verbal reminder that she had a problem with inappropriate behavior in the workplace. The memo stated that:

> The most recent issue was on Tuesday, March 3rd and Wednesday, March 4th when Lorrie was not available to discuss your STI worksheet. You received a message from Lorrie explaining that she would be in the office on Wednesday to discuss the worksheet but wanted you to have your check on Tuesday. Todd stated the same information, yet you persisted throughout the day. E-mails and voice mails were sent. . . .

> Wednesday, Lorrie spent 1½ hours discussing this and other issues with you.

See Exhibit M in Vol. I Of Defendants' Summary Judgment Exhibits (Doc. # 105). In addition, this incident was also discussed in McCurdy's deposition testimony, which defendants included in their initial brief. Specifically, McCurdy testified that she went home sick on Tuesday and asked Todd Feighner to give plaintiff her STI check and tell plaintiff that McCurdy would explain the calculation the next day. See Exhibit B in Vol. I Of Defendants' Summary Judgment Exhibits (Doc. # 105) at 127:1; see also Exhibit A in id. at 121, 124. McCurdy's account of her conversation with plaintiff appears only in defendants' reply memorandum. The fact that the conversation took place and that McCurdy deemed it to be confrontational, however, was clear from the materials in plaintiff's opposition and defendants' initial brief. The important information from this statement was that McCurdy had what she characterized as a confrontational exchange with plaintiff. The only bit of further information was that during this conversation, McCurdy told plaintiff that tardiness was an issue. Even if the Court had not included this exchange, the evidence showed that plaintiff had been informally reminded that tardiness was an issue. It also shows that McCurdy specifically told plaintiff that tardiness and attendance were problems on October 15, 1997, March 23, 1998, October 6, 1998 and December 4, 1998. See Exhibit A at 120:9–121:2; Exhibit M (notes from March 23, 1998 verbal warning); Exhibit P (December 4, 1998 written warning) in Vol. I Of Defendants' Summary Judgment Exhibits (Doc. # 105); Exhibit R (notes regarding October 6, 1998 conversation) in Plaintiff's Opposition Memorandum (Doc. # 115).

11. The record does not reveal the maximum increase available for this period, but three per cent was lower than the maximum. (Memorandum And Order (Doc. # 123) at 7–8.)

With her opposition memorandum, plaintiff included defendants' answers to interrogatories. Those answers stated that plaintiff did not receive the highest possible merit pay increase during any of the years that she worked for them. See Exhibit A in Plaintiff's Opposition Memorandum (Doc. # 115) at ¶¶ 13–16. These responses did not indicate the amount of the maximum increase.

12. McCurdy noted in plaintiff's written evaluations that she needed improvement in the areas of personal effectiveness and communication. (Memorandum And Order (Doc. # 123) at 8.)

In the pretrial order, which was entered before plaintiff responded to defendants' summary judgment motion, plaintiff stipulated that a stated reason for termination was lack of personal effectiveness. See Pretrial Order (Doc. # 101) at 16 ¶ U. Plaintiff also stipulated that inappropriate behavior was one of the stated reasons for her verbal warning, written warning and final written warning.[6] See id. at 14 ¶¶ D and F and 15 ¶ L. Whether McCurdy noted in plaintiff's evaluations or warnings that personal effectiveness was an issue, plaintiff stipulated to the underlying fact that a stated reason for termination was lack of personal effectiveness and that McCurdy had stated that inappropriate behavior (which impacts personal effectiveness) was a reason for the corrective actions.

The Court is mystified by plaintiff's argument that she had no opportunity to rebut McCurdy's alleged belief that plaintiff needed to improve her communication skills. In her opposition to defendants' summary judgment motion, plaintiff argued that she was substantially limited in her major life activity of communicating. Plaintiff supported this argument by stating that "that [d]efendants' own evidence,

including various notes made by her manager, Lorrie McCurdy, supports an inference that Plaintiff was substantially limited in the major life activities of communicating, concentrating and interacting with others." See Plaintiff's Opposition Memorandum (Doc. # 115) at 31. Plaintiff noted that Sprint found her deficient in communication skills. See id. at 29. The fact that McCurdy's evaluations found plaintiff to lack in communication skills was contained in plaintiff's own materials relative to her claim that she was limited in her ability to communicate. Plaintiff's argument that she was unable to rebut McCurdy's belief that she needed improvement in the areas of personal effectiveness and communication is disingenuous.

13. On April 9, 1998, McCurdy met with plaintiff to discuss plaintiff's new job responsibilities. On June 1, 1998, McCurdy and plaintiff had a telephone conversation about a work issue which involved Weidner. The record does not contain further information about these events, but McCurdy believed that both conversations were confrontational. (Memorandum And Order (Doc. # 123) at 8.)

This material was contained in Exhibit R in Plaintiff's Opposition Memorandum (Doc. # 115) at 4–5.

14. According to McCurdy, plaintiff also had an encounter with Bohanon on June 1, 1998. The record, however, does not reveal details regarding this meeting. (Memorandum And Order (Doc. # 123) at 8.)

This material was contained in Exhibit R in Plaintiff's Opposition Memorandum (Doc. # 115) at 4.

15. Around this time, on June 11, 1998, plaintiff met with Bonita Holland. Plaintiff felt that Holland had personally at-

---

**6.** Inappropriate behavior is a consideration in determining personal effectiveness.

tacked her during an analyst meeting. She asked Holland why she had challenged her during the meeting and told Holland that she should not speak out in meetings until she understood what was going on. (Memorandum And Order (Doc. # 123) at 8.)

Exhibit K in Plaintiff's Opposition Memorandum contained a memorandum from plaintiff which explained an encounter that she had with Bonita Holland. Plaintiff stated that she felt personally attacked and that she had asked Holland why she challenged plaintiff throughout the entire meeting. Plaintiff suggested that as a new analyst Holland should listen intently and understand what was being said before she questioned or wanted to change the established processes or procedures. In her opposition, plaintiff included a memorandum from Holland that discussed Holland's interpretation of the meeting. See Exhibit M in Plaintiff's Opposition Memorandum (Doc. # 115).

In summary, the Court did not rely on evidence which was new to plaintiff: virtually all of it appeared in defendants' initial brief or plaintiff's opposition brief. Even if this were not the case, defendants correctly argue that they did not advance any new legal argument. At most they presented additional evidence with regard to plaintiff's attendance issues, lack of personal effectiveness, behavioral problems and performance reviews. Plaintiff was fully aware that the stated reasons for termination were attendance issues and lack of personal effectiveness as evidenced

by inappropriate behavior warnings. Plaintiff attempted to refute these stated reasons by relying on positive performance reviews. Because she merely cited the reviews and did not include them in her opposition brief, defendants produced them in their reply—hardly an unexpected evidentiary move. The bulk of the material which the Court cited from defendants' reply brief merely responded to and elaborated on the evidence presented in plaintiff's memorandum in opposition.[7] In this regard, defendants' reply functioned in precisely the manner contemplated by D. Kan. Rule 56.1. The Court did not rely on any arguments of which plaintiff was not aware. In same vein, the Court did not rely on the arguably new affidavits from Draine and Holland which defendants submitted. Plaintiff had a full opportunity to litigate all of these issues which were squarely within the scope of the issues raised by defendants' original brief. Any argument to the contrary is without merit.

## B. Prima Facie Case Under The ADA

██ The Court granted defendants' summary judgment motion on plaintiff's ADA claims (Count I) because she did not meet her prima facie burden of showing that she was a qualified individual with a disability under the ADA. Plaintiff asserts that the Court erred by not finding that defendants "regarded" her as substantially limited in the major life activity of interacting with others.[8] Plaintiff did not raise this argument when she originally opposed defendants' motion for summary judg-

---

7. The Court represented that it would not utilize the material in defendants' reply and it recognizes that its statement of undisputed facts appears to contradict that representation. As the Court noted, in its discussion of the factual findings, however, those statements which were not explicitly stipulated to and were not contained in defendants' original brief or plaintiff's opposition were immaterial to the analysis and therefore not preju-

dicial to plaintiff. Any possible error in this regard does not constitute manifest injustice which would warrant reconsideration. The Court nonetheless apologizes for any confusion which it has inadvertently occasioned.

8. Plaintiff apparently does not contest the Court's summary judgment on her actual disability and record of disability claims.

ment,[9] and the Court did not address it. In seeking summary judgment, defendants argued that "working" was the major life activity which was at issue in plaintiff's "regarded as" claim. Without disagreement, plaintiff responded on the merits to defendants' argument and evidence.

■■■ Plaintiff now asserts that she was not claiming an inability to work, but rather an inability to interact with others. For plaintiff to defeat defendants' summary judgment motion, she was required to identify the medical condition which defendants perceived her as having and the major life activity which the medical condition was perceived to substantially limit. See *Tate v. Farmland Indus., Inc.*, 268 F.3d 989, 999 (10th Cir.2001); see also *Poindexter v. Atchison, Topeka and Santa Fe Railway Co.*, 168 F.3d 1228, 1232 (10th Cir.1999) ("plaintiff must articulate with precision the impairment alleged and the major life activity affected by that impair-

ment"). Having failed to do so in response to defendants' motion, plaintiff is not entitled to a second chance to articulate a viable theory of relief.

Even if plaintiff had properly placed this issue before the Court, she would not have prevailed on her claim that defendants regarded her as substantially limited in the major life activity of interacting with others. First, as the Court has noted, the Tenth Circuit has not held that interacting with others is a major life activity. See *Steele v. Thiokol*, 241 F.3d 1248, 1255 (10th Cir.2001) (need not decide whether interacting with others is major life activity because plaintiff's claim was insufficient even if it qualified); see also *McAlindin v. County of San Diego*, 192 F.3d 1226, 1235 (9th Cir.1999) (to demonstrate major life activity of interacting with others was substantially affected, plaintiff must show that relations with others were characterized on regular basis by severe problems, e.g. consistently high levels of hostility, social

---

9. In opposing defendants' summary judgment motion, plaintiff argued that she was a qualified individual with a disability under all three ADA definitions. To make such a showing, plaintiff was required to show that a physical or mental impairment substantially limited one or more of her major life activities. Plaintiff was therefore required to specify which major life activity was at issue and explain how her disabilities affected that major life activity.

As to an actual disability, plaintiff argued that her impairments substantially limited the major life activities of caring for herself, speaking, concentrating, learning, interacting with others and working overtime. See Plaintiff's Opposition Memorandum (Doc. # 115) at 28. Plaintiff later conceded that working overtime was not a major life activity.

In terms of a record of disability, plaintiff's summary judgment opposition only claimed one major life activity: working. See *id.* at 36–37.

Plaintiff's summary judgment opposition did not specifically mention any major life activity in discussing whether defendants "regarded" her as disabled. The pretrial order did not

provide any guidance on this subject since it presented the issue as whether Sprint perceived plaintiff as having a disability that substantially limited her ability to engage in *any* major life activity. Amended Pretrial Order (Doc. # 118) at 17 ¶ f.

The Court's duties in ruling on a motion for summary judgment do not include identifying sua sponte which of plaintiff's major life activities might be substantially limited. In the pretrial order, plaintiff stated that "she had physical and mental impairments in the form of bipolar disorder, hypothyroidism and adult attention deficit and hyperactivity disorder," that she was regarded as having a disability and that "such impairments substantially limited her ability to care for herself, speak, concentrate, sleep, interact with others, learn and work for extended periods of time." See *id.* at 7. Although this order set forth plaintiff's allegation as to major life activities, she mentioned none of them in responding to summary judgment on the issue whether defendants regarded her as disabled. Plaintiff left the Court to assume that defendants had correctly identified working as the major life activity which was at issue in this claim.

withdrawal or failure to communicate when necessary). Second, even if the Tenth Circuit considered interacting with others to be a major life activity, plaintiff has not shown a substantial limitation in this area. In Steele, plaintiff attempted to establish that his supervisor regarded him as disabled, based on evidence that (1) defendant knew that plaintiff was disabled and that he was on medication, and (2) one of plaintiff's supervisors evinced concern about plaintiff's mood swings and asked the company nurse whether they could be a side effect of plaintiff's medication. 241 F.3d at 1256. The Tenth Circuit held that "[t]his falls far short of raising a triable issue that Mr. Steele was regarded by his employer as being substantially limited in his ability to sleep, walk, or interact with others as a result." *Id.* (citing *Cody v. CIGNA Healthcare of St. Louis, Inc.,* 139 F.3d 595, 599 (8th Cir.1998); 29 C.F.R. § 1630.2(*l* )(1), (3) ("an employer's request for a mental evaluation ... is not equivalent to treatment of the employee as though she were substantially impaired.")).

In this case, plaintiff cited the facts that Carson referred her to the Employee Assistance Program in 1997 when plaintiff made a comment about jumping off a bridge; that McCurdy investigated Fluke's report that plaintiff made other employees feel physically threatened (a report that McCurdy ultimately dismissed); that plaintiff's supervisors ordered her to not have closed door meetings; that McCurdy and Carson wanted security present when

they disciplined and terminated plaintiff; and that Weidner told McCurdy and Carson that plaintiff might physically harm herself or someone else. Plaintiff's evidence did not suggest that defendants were motivated by misperceptions that plaintiff was substantially limited in the major life activity of interacting with others. At best, plaintiff's evidence showed that she had run-ins with co-workers and actual difficulty in getting along with them. The record did not evidence stereotypical assumptions by McCurdy and Carson, but the reality of plaintiff's workplace behavior as shown by the summary judgment record.[10] The Court did not commit clear error in sustaining defendants' motion for summary judgment on plaintiff's ADA claim.

**C. Plaintiff's Showing Of Pretext**

▆ Plaintiff next argues that the Court should have found that plaintiff met her burden of showing that defendants' actions were a pretext for discrimination. Plaintiff contends that since she has presented evidence to support a prima facie discrimination case under the ADA and retaliation under the ADA, FMLA and Kansas law, and since she has come forward with evidence which casts doubt upon defendants' entire course of treatment of her, summary judgment was precluded.[11] Specifically, plaintiff argues that the Court inappropriately weighed evidence, engaged in credibility determinations and ignored

---

**10.** Under the actual disability analysis, the Court found as a matter of law that plaintiff's difficulty in getting along with others was not substantially limited on account of her claimed disabilities. As it noted, plaintiff's burden was to show that she had a global problem interacting with others, not merely that she had difficulty getting along with co-workers.

**11.** As the Court noted above, plaintiff did not adequately show that she was a qualified indi-

vidual with a disability under the ADA. Therefore summary judgment on that claim was appropriate regardless of any pretext argument. In addition, plaintiff does not address the Court's dismissal of her claim that defendants retaliated against her in violation of Kansas worker's compensation law. The Court sees no reason why any pretext analysis would have allowed that claim to proceed to trial.

the impact of *Reeves v. Sanderson Plumbing*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). In its order, the Court discussed plaintiff's pretext burden with regard to her claim of FMLA retaliation (Count III) and ADA retaliation (Count IV)—the only two claims on which plaintiff made her prima facie showing.

Plaintiff bases the bulk of her argument on Reeves and Tenth Circuit cases which have followed Reeves. In Reeves, the Supreme Court held that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* at 147, 120 S.Ct. 2097. The Supreme Court found that the Fifth Circuit had erred by requiring that plaintiff provide additional, independent evidence of discrimination and that the trial court had appropriately submitted plaintiff's case to the jury. *Id.* at 148–49, 120 S.Ct. 2097. The Supreme Court qualified its holding, however, by stating that "an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Id.* at 148, 120 S.Ct. 2097.

■ Plaintiff contends that "this Court has clearly chosen whose testimony and evidence to believe and whose testimony to reject" and that "[s]uch choices are improper at the summary judgment stage and must be left to the jury." Plaintiff's Motion (And Memorandum In Support Of Motion) To Alter Or Amend Judgment Or, In The Alternative, For Relief From Judgment (Doc. # 123) filed August 20, 2001 at 11. Plaintiff argues that "[d]efendants' evidence must be ignored—unless it helps plaintiff." *Id.* at 6. While the Supreme Court has clearly held that a court "must draw all favorable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence," the Court is perplexed by plaintiff's assertion that defendants' evidence is irrelevant unless it is helpful to her. Reeves, 530 U.S. at 150, 120 S.Ct. 2097. Plaintiff may not rest on her pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which she carries the burden of proof. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In this Circuit, Reeves has not changed plaintiff's burden for the purposes of summary judgment. See *Adams v. Goodyear Tire & Rubber Co.*, No. 96–4228–SAC, 2000 WL 1859000, at *1 (D.Kan. Nov. 9, 2000) ("Reeves does not constitute a significant change in the manner in which the Tenth Circuit ... has traditionally applied McDonnell Douglas and the pretext analysis."). Reeves does not eliminate plaintiff's obligation to establish her prima facie case and provide sufficient evidence to disbelieve defendants' legitimate, non-discriminatory explanations for firing her. See *Guyton v. Ottawa Truck Div.*, 15 Fed Appx. 571, 2001 WL 433427, at *3 (10th Cir. Apr. 27, 2001); see also *Toth v. Gates Rubber Co.*, 216 F.3d 1088, 2000 WL 796068, at *5 (10th Cir. June 21, 2001) (after defendants articulate legitimate, nondiscriminatory reason for their action, plaintiff can only avoid summary judgment if she can provide evidence showing discriminatory motive or that defendants' proffered explanation is pretextual); *Foster v. AlliedSignal Inc.*, No. 97–4232–CM, 2000 WL 1117466, at *1–2 (D.Kan. July 11, 2000) (summary judgment appropriate when plaintiff failed to provide sufficient evidence for trier of fact to disbelieve defendant's legitimate, nondiscriminatory

reasons for decision to terminate plaintiff's employment).

Plaintiff provides few examples of either inappropriate weighing of evidence or credibility determinations by the Court. In her motion, plaintiff does state that "[t]he Court makes no effort to hide its doubts about Dillard's testimony." Plaintiff's Motion For Reconsideration (Doc. # 125) at 4 n. 5. In support of her claim, plaintiff cites two passages in the Court's order. The first passage deals with a conversation between McCurdy and Dillard on July 17, 1998 concerning the first corrective action against plaintiff. Dillard expressed concern that McCurdy and Carson were building a file on plaintiff by making a disciplinary decision based on after-the-fact documentation. Plaintiff quarrels with the Court's footnote to this statement, which stated that "Dillard shared this concern with Kinney. Dillard claims that she also told McCurdy and Carson about her concern. Carson specifically denies this conversation but McCurdy does not." Memorandum And Order (Doc. # 123) at 9 n. 5. The Court could have stated that "Dillard shared her concern with Kinney and McCurdy and, viewing the record in the light most favorable to plaintiff, with Carson." In its footnote, however, the Court did not resolve a factual dispute; it merely set forth the evidence—and it did so correctly. Moreover, whether Dillard shared her concern with Kinney, McCurdy and/or Carson was irrelevant to any larger issue in the case.

Plaintiff quarrels that another footnote reveals an inappropriate determination with respect to credibility. Before plaintiff returned from her first short-term disability leave, Dillard met with Carson and McCurdy to discuss plaintiff's workload. Plaintiff cites the following footnote: "Dillard later came to believe that McCurdy and Carson had purposely overloaded plaintiff with work when she returned from disability. Dillard allegedly shared this concern with Kinney, but Kinney does not recall the conversation." Memorandum And Order (Doc. # 123) at 12 n. 11. Again, viewed in the light most favorable to plaintiff, Dillard shared her concern with Kinney. This conversation, however, does not change the Court's analysis because the point is immaterial to any larger issue. Moreover, the Court's statement reflects no judgment whatsoever as to credibility.

The heart of plaintiff's claim is that the Court improperly discounted Dillard's testimony. For the purposes of summary judgment, however, the facts show that Dillard put McCurdy and Carson on notice that plaintiff had disabilities, that those disabilities might interfere with plaintiff's work and that they needed to consider this fact in making disciplinary decisions. Although there was conflicting evidence as to whether all of these conversations occurred exactly as plaintiff alleged, the Court did not adopt defendants' apparent claim that Dillard never conveyed her concerns to Kinney, McCurdy or Carson.[12] Furthermore, plaintiff does not point to any relevant record evidence that the Court omitted from its analysis.

■■■ Plaintiff admitted that she was tardy to work, received inappropriate emails (one reason for the first corrective action) and had interactions with other co-

---

12. The Court's order noted that Dillard advised McCurdy and Carson that they should not discipline plaintiff on July 21, 1998, that plaintiff believed she was in a hostile work environment, that plaintiff had illnesses that might cause emotional outbursts and create an inability to deal with others, that they had a duty to reasonably accommodate plaintiff and that McCurdy and Carson had a duty to not retaliate against plaintiff in any way. See Memorandum And Order (Doc. # 123) at 9–10, 17.

workers which they characterized as hostile.[13] To rebut defendants' attendance argument, plaintiff presented testimony from Kinney that the attendance-related corrective action policy was not 100 per cent mandatory and that nothing is black and white. Plaintiff also presented Dillard's testimony that companywide, other employees had more serious attendance issues than plaintiff. Within the group that McCurdy and Carson supervised, however, plaintiff presented no evidence to controvert their opinion that plaintiff had the worst attendance issues and continued personal effectiveness problems. Under Reeves, plaintiff may not overcome summary judgment if the "record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." 530 U.S. at 148, 120 S.Ct. 2097. While defendants may not have conclusively established a nondiscriminatory reason for their decision, plaintiff did not adequately satisfy her burden under McDonnell Douglas.

This situation is not similar to those that plaintiff cites in support of her motion for reconsideration. In *Griffis v. City of Norman*, 232 F.3d 901, 2000 WL 1531898 (10th Cir. Oct. 17, 2000), defendant's proffered reason for failing to promote plaintiff was that she could not perform one of the positions which she would be supervising because she had a "black accent" which her co-workers could not understand. Aside from the accent issue, plaintiff presented ample evidence that she was more qualified for the promotion than the person selected for the position. In this case,

plaintiff does not challenge the fact that she had attendance problems and inappropriate behavior issues. Her argument is that her supervisors were hyper-vigilant and that she should not have been disciplined for breaking the rules because (according to Dillard) other employees with worse attendance problems were not disciplined. Plaintiff did not show, however, that other employees were similarly situated. See *Medina v. Rocky Mountain Health Care Corp.*, 221 F.3d 1352, 2000 WL 963164 (10th Cir. July 12, 2000) (plaintiff must show that other employees were similarly situated to survive summary judgment); *Adkins v. United Food & Commercial Workers Intern. Union, Local 7*, —— F.3d ——, 2001 WL 845173, at *5 (10th Cir. July 25, 2001) (summary judgment appropriate when terminated plaintiff with poor work record failed to show that other employees with poor work records that were not terminated were similarly situated). Furthermore, plaintiff does not provide any evidence that employees with behavioral problems and attendance problems were not disciplined. See *Tyler v. RE/MAX Mountain States, Inc.*, 232 F.3d 808, (10th Cir.2000) (generally employee must show that each proffered nondiscriminatory reason is pretextual).

Plaintiff also cites *Lundien v. United Airlines*, 242 F.3d 389, 2000 WL 1786579 (10th Cir. Dec.6, 2000). The Tenth Circuit reversed summary judgment for defendant in Lundien because the trial court used the pretext-plus test by requiring plaintiff to not only show that defendants' offered reason for her termination was false, but to also show that discrimination motivated defendant's actions. This Court did not require plaintiff to make a pretext-plus

---

**13.** Plaintiff contended that Draine and Holland submitted their version of events after the fact and that this mitigated against the validity of that reason for discipline, but she did not provide evidence that they did not subjectively believe their characterization of events.

showing, summary judgment for defendants was appropriate because plaintiff failed to show that defendants' offered reasons for her termination were false or unworthy of belief. In that regard, this case is similar to *Wood v. City Of Topeka*, No. 00–3060, 2001 WL 649219 (10th Cir. June 12, 2001). The Tenth Circuit affirmed summary judgment for defendant because plaintiff relied only on random comments by co-workers in an attempt to defeat defendant's asserted reason for firing him—that he had been the subject of repeated sexual harassment complaints. As in this case, plaintiff failed to counter defendant's legitimate, nondiscriminatory reason for his termination.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion (And Memorandum In Support Of Motion) To Alter Or Amend Judgment Or, In The Alternative, For Relief From Judgment (Doc. # 123) filed August 20, 2001 be and hereby is **OVERRULED.**